11 Cal.App.4th 109 (1992)
14 Cal. Rptr.2d 184
FREDERICK M. HENRIKSEN et al., Plaintiffs and Appellants,
v.
GREAT AMERICAN SAVINGS AND LOAN et al., Defendants and Respondents.
Docket No. A055607.
Court of Appeals of California, First District, Division Four.
November 25, 1992.
*111 COUNSEL
Bartko, Welsh, Tarrant & Miller, Charles G. Miller, Michael D. Welch and C. Griffith Towle for Plaintiffs and Appellants.
Spector & Stieg, Ross A. Spector and Sherri L. Stieg for Defendants and Respondents.
[Opinion certified for partial publication.[*]]
OPINION
POCHE, J.
(1) Appellants Frederick M. Henriksen and Ramon A. Zambrano appeal from an order disqualifying[1] the law firm of Bartko, Welsh, Tarrant & Miller from further representing them in the underlying litigation. At issue is whether a law firm may continue to represent a client where during the pendency of litigation it hires an associate who formerly represented the adverse party in the same proceeding. We follow Dill v. Superior Court (1984) 158 Cal. App.3d 301 [205 Cal. Rptr. 671], and hold that the associate's disqualification results in the vicarious disqualification of the entire law firm. This disqualification is compelled even if the law firm takes measures to insulate the new associate from any involvement in the current litigation.

I.
The underlying dispute concerns a construction loan made to appellants by respondents, Great American Savings and Loan, and its subsidiary, Mountain South Corporation, for a residential condominium project in San Francisco. Appellants commenced the suit in January of 1989. Two months later, respondents responded with a cross-complaint for judicial foreclosure.
Appellants were initially represented by the firm of Rubin, Egan & Webster, but in September of 1989 they substituted as their counsel the law firm of Bartko, Welsh, Tarrant & Miller (Bartko).
From the inception of the suit until July of 1990 respondents were represented by the law firm of Hoge, Fenton, Jones & Appel (Hoge). One of *112 the Hoge attorneys working on the defense case for the savings and loan defendants was Peter J. Brock. Brock represented respondents in all matters of the case including the preparation for a jury trial and in settlement hearings. According to Brock's declaration, he spent "in excess of 200 hours learning the case, attending and taking depositions, appearing in court, retaining and preparing expert witnesses, and doing any other work that needed to be done on the file."
In July of 1990 the savings and loan respondents were placed into receivership by the Resolution Trust Corporation (RTC) and the Hoge firm was replaced as counsel by the firm of Tarkington, O'Connor & O'Neill. The Bartko firm continued to represent appellants.
In early June of 1991 Michael Welch of the Bartko firm notified opposing counsel that Peter Brock would be joining their firm as of June 24, 1991, and asked for a waiver of "any potential conflict with [their] continued representation of [appellants]." Responding that "an unquestionable conflict of interest [would] exist once Mr. Brock formally [joined the Bartko] firm," opposing counsel demanded that the Bartko firm "immediately withdraw as counsel" for appellants. The Bartko firm responded by requesting that respondents agree to an arrangement in which Brock "would be isolated from any discussions, work, contact, or involvement in any way" with the case. In the alternative, the firm requested respondents to make a formal motion to disqualify.[2]
After Brock had joined the firm, respondents formally moved to disqualify the entire Bartko firm from representing appellants in the action. In opposition, appellants argued that it would "unfairly prejudice" their ability to try the "ready for trial" case and subject them to a "financial hardship in having to bring a replacement law firm up to speed." The Bartko firm alleged that it had and would continue to isolate Brock from any involvement in or discussion about the Henriksen litigation. Despite their attempts at building an ethical wall[3] around Brock, the trial court ruled that the entire Bartko firm was disqualified from further representing appellants in this action. This timely appeal followed.

*113 II.

A. Disqualification of Bartko Firm.

(2a) Appellants contend that the trial court abused its discretion in disqualifying the entire Bartko firm from representing appellants in this action. We find no such abuse.
The trial court is vested with the power "[t]o control in furtherance of justice, the conduct of its ministerial officers." That power includes the disqualifying of an attorney. (Code Civ. Proc., § 128, subd. (d); Comden v. Superior Court (1978) 20 Cal.3d 906, 969 [145 Cal. Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562]; Gregori v. Bank of America (1989) 207 Cal. App.3d 291, 299 [254 Cal. Rptr. 853].) (3) Whether an attorney should be disqualified is a matter addressed to the sound discretion of the trial court. (Comden v. Superior Court, supra, 20 Cal.3d at p. 969; Elliott v. McFarland Unified School Dist. (1985) 165 Cal. App.3d 562, 567 [211 Cal. Rptr. 802].) In exercising that discretion, the trial court is required to make a reasoned judgment which complies with the legal principles and policies applicable to the issue at hand. (Bullis v. Security Pac. Nat. Bank (1978) 21 Cal.3d 801, 815 [148 Cal. Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) Discretion will thus be deemed to have been abused if the trial court fails to exercise discretion where such exercise is required. (Truck Ins. Exchange v. Fireman's Fund Ins. Co., supra, 6 Cal. App.4th at p. 1055.)
We start with the rules which would prohibit Brock from representing appellants. (4) Under rule 3-310(D) of the California Rules of Professional Conduct, an attorney may not represent a new client whose interests are adverse to those of a former client on a matter in which the attorney has obtained confidential information.[4] The purpose of the rule is to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends. (David Welch Co. v. Erskine & Tulley (1988) 203 Cal. App.3d 884, 891 [250 Cal. Rptr. 339].) The fiduciary nature of that relationship requires the application of strict standards. (Civil Service Com. v. Superior Court (1984) 163 Cal. App.3d 70, 79 [209 Cal. Rptr. 159].) For that reason, a former client may seek to disqualify a former attorney from representing an adverse party by showing that the former attorney possesses confidential information adverse to the former client. (H.F. Ahmanson & Co. v. Salomon Brothers, Inc. (1991) 229 Cal. App.3d 1445, 1452 [280 Cal. Rptr. 614].)
*114 In order to seek disqualification, the former client need not establish that the attorney actually possesses confidential information. It is enough to show that there was a "substantial relationship" between the former and the current representation. If the former client establishes the existence of a substantial relationship between the two representations the court will conclusively presume that the attorney possesses confidential information adverse to the former client and order disqualification. (River West, Inc. v. Nickel (1987) 188 Cal. App.3d 1297, 1303 [234 Cal. Rptr. 33]; accord, Rosenfeld Construction Co. v. Superior Court (1991) 235 Cal. App.3d 566, 573-576 [286 Cal. Rptr. 609]; H.F. Ahmanson & Co. v. Salomon Brothers, Inc., supra, 229 Cal. App.3d at p. 1452; Global Van Lines, Inc. v. Superior Court (1983) 144 Cal. App.3d 483, 487-488 [192 Cal. Rptr. 609]; see generally Note, Developments in the Law: Conflicts of Interests in the Legal Profession (1981) 94 Harv.L.Rev. 1244, 1315-1354.)
(2b) We need not dwell on the elements of the "substantial relationship" test for in this case there is no dispute that Brock in fact acquired confidential information during his former representation of respondents. Because Brock possesses such confidential information, rule 3-310(D) of the California Rules of Professional Conduct would prohibit him from switching sides and representing appellants in the same litigation. (Accord, Dill v. Superior Court, supra, 158 Cal. App.3d at pp. 301, 304; to the same effect see Cal. Compendium on Professional Responsibility, State Bar Formal Opinion No. SD 1975-1, pp. II C-144-146.)
The question is whether Brock's disqualification taints the entire Bartko firm. It does.
The California Rules of Professional Conduct do not specifically address the question of vicarious disqualification, and for that reason the vicarious disqualification rules have essentially been shaped by judicial decisions. As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well.[5] (Klein v. Superior Court (1988) 198 Cal. App.3d 894, 909, 912-913 [244 Cal. Rptr. 226]; William H. Raley Co. v. Superior Court (1983) 149 Cal. App.3d 1042, 1048-1049 [197 Cal. Rptr. 232]; Dill v. Superior Court, *115 supra, 158 Cal. App.3d 301; Global Van Lines, Inc. v. Superior Court, supra, 144 Cal. App.3d 483.) This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit. On point and controlling is Dill v. Superior Court, supra, 158 Cal. App.3d 301.
In Dill, an associate (Hale) of the firm representing the plaintiff joined the firm representing the defendant during the pendency of litigation. In the course of his employment with the plaintiff's firm Hale obtained confidential information concerning the dispute. After Hale switched sides, the plaintiff moved to disqualify both Hale and the entire firm from representing the defendants. The trial court granted the motion and the defendant appealed. In holding that Hale's employment vicariously disqualified his new firm from continuing representing the defendant, the Court of Appeal reasoned: "We are mindful of the right of parties to counsel of their choice, and of the financial burden imposed if disqualified counsel must be replaced. [Citation.] However, those interests must be balanced against the need to maintain high ethical standards of professional responsibility. [Citation.] Here, the compelling reason for disqualification from representation is Hale's former personal involvement on petitioner's behalf in the identical action. Under these circumstances, the law firm representing [defendant] also must be disqualified. [Citation.]" (158 Cal. App.3d at p. 306.)
Making no attempt whatsoever to distinguish Dill, appellants claim that the trial court abused its discretion in failing to consider that Bartko had screened Brock from participating in the case since the moment he arrived at the firm. The record does not reflect a refusal on the part of the trial court judge to consider either Bartko's evidence or its legal argument. It does reveal the court believed it had no choice but to disqualify the entire firm. The trial court was right.
We recognize that the ethical wall concept has had some limited acceptance in California as a method to avoid what might be the unduly harsh result of vicarious disqualification of an entire firm. But that acceptance has been in a very different arena  that of former government attorneys now in private practice  and has involved a situation in which the former government attorney has not had access to confidential information concerning the subject matter of the litigation. (See, e.g., Chambers v. Superior Court (1981) 121 Cal. App.3d 893, 903 [175 Cal. Rptr. 575].)
But, the ethical wall concept has not found judicial acceptance in California on our facts: a nongovernmental attorney armed with confidential information who switches sides during the pendency of litigation. Certainly the *116 Dill court did not endorse the concept. Instead it concluded: "the law firm representing real parties must also be disqualified." (158 Cal. App.3d at p. 306 (italics added).) In the Dill court's view there simply was no gray area; nor do we see any: the entire firm must be vicariously disqualified even if Brock has been ethically screened[6] from day one.
Not satisfied that Dill should be the last word on the subject, appellants seek refuge in the following line from a more recent case, Klein v. Superior Court, supra, 198 Cal. App.3d 894. The line is this: "California law clearly prohibits continued representation in a situation such as this, where a partner in a law firm has been disqualified from representation because of his prior receipt of confidential information, and where there has been no attempt to screen him from the litigation at hand." (Id. at pp. 913-914.) Because the Bartko firm attempted to screen Brock from participation in this litigation, appellants argue Klein supports their view that the firm may continue to represent them in this litigation. We wonder whether appellants are reading the same case we are.
Klein is factually inapposite in that the former representation reviewed there was not in the identical lawsuit. Thus, to the extent the court in Klein was attempting to create a rule of law, that rule would not govern the factual situation at hand. Nor did the court in Klein intend that it should.
The Klein court exhaustively reviewed the California cases which addressed vicarious exclusion and the ethical wall doctrine. (See 198 Cal. App.3d at pp. 908-913.) Included within that review was Dill. With respect to Dill the Klein court specifically noted that Dill had rejected the *117 screening concept as "not applicable when the attorney in question performed work for the opposing party in the same lawsuit." (Klein v. Superior Court, supra, 198 Cal. App.3d at p. 912.) The Klein court then added its own commentary about the Dill factual situation: "Those facts mandate vicarious disqualification." (Klein v. Superior Court, supra, 198 Cal. App.3d at p. 912 (italics added).) Thus not only does Klein not support appellants' position, it does not purport to alter the controlling rule of Dill.
In sum, we believe the rule to be quite clear cut in California: where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law. (Dill v. Superior Court, supra, 158 Cal. App.3d at pp. 305-306; see also Klein v. Superior Court, supra, 198 Cal. App.3d at p. 912.) The trial court did not abuse its discretion in disqualifying the Bartko firm from continuing in its representation of appellants in the instant proceeding.

B., C.[*]
.... .... .... .... .... .... .... .
The order of disqualification is affirmed. Respondents to recover their costs on appeal.
Anderson, P.J., and Reardon, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.B. and II.C.
[1] The order is appealable as a final order upon a collateral matter. (Meehan v. Hopps (1955) 45 Cal.2d 213, 215-217 [288 P.2d 267]; Truck Ins. Exchange v. Fireman's Fund Ins. Co. (1992) 6 Cal. App.4th 1050, 1052-1053, fn. 1 [8 Cal. Rptr.2d 228].)
[2] Apparently the Bartko firm asked to voluntarily withdraw from the case but appellants refused.
[3] We prefer to use the term "ethical wall" rather than the more common, and often criticized term, "Chinese Wall." (See Peat, Marwick, Mitchell & Co. v. Superior Court (1988) 200 Cal. App.3d 272, 293-294 [245 Cal. Rptr. 873].)
[4] Rule 3-310(D) of the Rules of Professional Conduct of the State Bar of California provides: "A member shall not accept employment adverse to a client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment except with the informed written consent of the client or former client." (See also ABA Model Rules Prof. Conduct, rule 1.9.)
[5] There have been a few exceptions to the rule of automatic disqualification. For example in Chronometrics, Inc. v. Sysgen, Inc. (1980) 110 Cal. App.3d 597 [168 Cal. Rptr. 196], the court held that vicarious disqualification of an entire law firm as a punitive measure was not required where an associate had been disqualified for improperly communicating with a represented party. The court emphasized, however, that the individual who had been contacted was no longer a party to the suit, and specifically reserved any opinion as to whether it might order disqualification of the entire firm if the facts were different. (Id. at p. 608, fn. 3; see also Mills Land & Water Co. v. Golden West Refining Co. (1986) 186 Cal. App.3d 116 [230 Cal. Rptr. 461].)
[6] Even if one were to concede that ethical walls can be built on the soil of the facts of this case, Bartko did not engage in such construction.

The typical elements of an ethical wall are: physical, geographic, and departmental separation of attorneys; prohibitions against and sanctions for discussing confidential matters; established rules and procedures preventing access to confidential information and files; procedures preventing a disqualified attorney from sharing in the profits from the representation; and continuing education in professional responsibility. (See, e.g., Paul E. Iacono Structural Engineer, Inc. v. Humphrey (9th Cir.1983) 722 F.2d 435, 442, fn. 10; Employers Ins. of Wausau v. Albert D. Seeno Const. (N.D.Cal. 1988) 692 F. Supp. 1150, 1164-1165, fn. 17; Comment, The Chinese Wall Defense to Law-Firm Disqualification (1980) 128 U.Pa.L.Rev. 677, 706-713.)
The sole evidence of the screening procedure utilized by Bartko was a declaration by a Bartko partner to the effect that "[n]o one at this firm has discussed this case" with Brock and that the firm has "undertaken measures to ensure that Mr. Brock will not be subjected to our clients' confidential information." What "measures" Bartko had undertaken were not specified. The declaration did not spell out what Bartko had done to ensure that Brock did not violate or would not benefit from violating his duty to protect the confidentiality of the information he obtained while representing respondents. In short, Bartko did not establish that it had even begun to build a wall or a screen around Mr. Brock.
[*] See footnote, ante, page 109.