**In re MORTGAGE & REALTY TRUST, Debtor.**

**VALUE PROPERTY TRUST, Plaintiff,**

v.

**ZIM CO., Defendant.**

**Bankruptcy No. LA 95–31101.
Adv. No. 95–05861.**

United States Bankruptcy Court,
C.D. California.

April 29, 1996.

Bennett Murphy of Latham & Watkins, Los Angeles, CA, for Value Property Trust.

Lloyd A. Palans and Kevin M. Abel of Bryan Cave L.L.P., St. Louis, MO, and John W. Amberg and Robert E. Boone, III of Bryan Cave L.L.P., Los Angeles, CA, for Zim Co.

## OPINION DISQUALIFYING BRYAN CAVE AS COUNSEL FOR DEFENDANT

SAMUEL L. BUFFORD, Bankruptcy Judge.

### INTRODUCTION

The reorganized debtor in this case, which has brought this adversary proceeding to cancel a purported contract with defendant Zim Co. ("Zim"), moves this Court to disqualify Zim's counsel of record, Bryan Cave.

The Court holds that Bryan Cave must be disqualified, because one of its lawyers served on the debtor's board of trustees when the transaction here at issue was considered by the board. The Court finds that the fiduciary duty of loyalty of the trustee continues after his resignation from the board (which happened on the effective date of the reorganization plan), with respect to matters considered by the board of trustees while he was a member, and that these duties conflict with those owing by the trustee's law firm as counsel for the defendant. The Court further holds that this conflict of interest of the trustee is imputed to the law firm, and requires its disqualification.

This case illustrates the requirement that a conflict of interest held by one attorney in a law firm normally extends to the entire firm, no matter how large. In such a circumstance, if the conflict requires the disqualification of that attorney, the entire firm must be disqualified, including all attorneys in all offices of the firm.

## II. FACTS

■ Mortgage & Realty Trust ("MRT"), a real estate investment trust ("REIT") [1] organized under the laws of the State of Maryland, filed this chapter 11 bankruptcy case on August 18, 1995. At the same time that MRT filed this case, it filed a prepackaged plan of reorganization, for which it had already solicited acceptances pursuant to a prospectus under § 12 of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78l (1981 & Supp.1995). Five weeks later the Court confirmed the plan of reorganization on September 22, 1995. This is MRT's second chapter 11 case: it previously filed a chapter 11 case in this Court on April 10, 1990, and the Court confirmed the prior plan of reorganization on February 21, 1991.

MRT's reorganization plan in this case essentially provided that the debtor would continue in its REIT business, but that a substantial portion of its debt would be converted into equity. This new equity constitutes approximately 98% of the present equity in the debtor. While the old shareholders continue to hold their shares, they have been diluted to some two percent of the outstanding equity.

After confirmation of the plan, MRT filed articles of amendment and restatement of its charter, which made two changes in the charter. First, the amendment changed the name of the debtor to Value Property Trust ("VPT"). Second, the amendment substituted new trustees and officers for those who previously held office. No other changes have been made in the charter.

MRT was governed by a board of trustees, and Jeffrey M. Bucher served as a member of the board from 1979 until the effective date of MRT's reorganization plan on September 29, 1995. For at least the last nine years, he has been the only attorney serving on the seven-member board. The Court has seen no evidence that Bucher has ever served as legal counsel for MRT. MRT has had no in-house legal counsel, and its outside counsel until recently was Morgan, Lewis & Bockius. Bucher received more than $85,000 in compensation for his service for his final three years on the board (including his distribution from MRT's pension plan), which he did not share with his law firm. He resigned his position, as required by MRT's plan of reorganization, on September 29, 1995, the effective date of the plan.

Bucher has been of counsel to the Washington, D.C. office of Bryan Cave since 1993. He is licensed to practice law in both the District of Columbia and California. Bryan Cave has never represented MRT.

Bryan Cave is legal counsel for defendant Zim in this adversary proceeding, as well as in related litigation pending in state court in Missouri. Bryan Cave is a firm of approximately 400 attorneys [2] that is headquartered

---

1. Under Maryland law, a real estate investment trust is an unincorporated trust or association in which "property is acquired, held, managed, administered, controlled, invested, or disposed of for the benefit and profit of any person who may become a shareholder." Md.Corps. & Ass'ns Code Ann. § 8–101(b) (Supp.1995).

2. The reorganized debtor in this case is represented by an even larger firm, Latham & Watkins, which has approximately 683 attorneys in 12 cities, and has foreign offices in London, Tokyo, Hong Kong and Moscow.

in St. Louis, Missouri, and has offices in nine cities in the United States and in seven foreign countries.[3] This litigation, as well as the related state court litigation in Missouri, is handled by attorneys in its St. Louis office.

On August 14, 1995, four days before this bankruptcy case was filed, MRT's board of trustees considered a contract with Zim to sell Zim its Villa del Cresta Apartments in Florissant, Missouri, a suburb of St. Louis, for $9.8 million. At the same meeting MRT's board of trustees approved the filing of this bankruptcy case. Bucher was present during the deliberations concerning the Zim contract, and he voted in favor of it. Apparently, however, he presently has no memory of the discussion on this subject at the meeting.

On August 22, 1986, four days after this bankruptcy case was filed, MRT signed a contract of sale for the apartment complex, and Zim signed the contract on August 24, 1995. No court authorization for this contract was ever sought.

The plan of reorganization gave VPT a 90–day window after confirmation to avoid any postpetition transfers. VPT timely filed this adversary proceeding to set aside the sale to Zim, on the grounds that it was a postpetition transaction that was unauthorized because it lacked court approval. At approximately the same time, Zim filed a state court action in Missouri seeking to enforce its alleged contract with VTP. The principal issue raised by the complaint in this adversary proceeding is whether the contract is binding on VPT, in view of the fact that the contract was signed while the bankruptcy case was pending, and no court authorization was ever sought or obtained.

Zim is represented in both this litigation and the Missouri state court litigation (which has since been removed to the federal district court) by Bryan Cave, the very law firm where Bucher practices. VPT has challenged Bryan Cave's representation of Zim with this motion to disqualify it as counsel.

## III. DISCUSSION

Attorneys have served as directors of corporations for many years, probably more than a century. One would have expected a plethora of reported decisions on the issue on whether such service creates a conflict of interest for the attorney's law firm in representing a client opposing the corporation with respect to a decision made while the attorney was a director. However, the Court has found very few relevant reported decisions.

### A. Preliminary Issues

Before addressing the merits, the Court must consider two preliminary matters: does VPT have standing to bring this motion, and which jurisdiction's standards of professional conduct apply to this motion, pursuant to the applicable choice of law rules.

### 1. Standing of VPT

Zim argues that VPT lacks standing to bring this motion, because it is a different entity from that in which Bucher was a member of the board of trustees. Zim contends that a post-confirmation amendment and restatement of MRT's charter made it a new and different entity, that lacks sufficient continuity with MRT to support this motion.

Zim argues that VPT as successor to MRT lacks standing to bring this motion, and relies on *Nissen Corp. v. Miller*, 323 Md. 613, 594 A.2d 564 (1991), in support of its position. However, this is not a case of successor liability, and *Nissen* provides Zim no support. *Nissen* involved the sale of assets from one entity to another, and the question of whether a product liability case could be brought against the successor corporation. In contrast, this case does not involve the liability of a different entity, that acquired assets from an entity that might otherwise be liable on a claim.

After the confirmation of the plan, MRT amended and restated its charter. However, the amendment accomplished only two changes, both of which were quite minor: (1) MRT changed its name to VPT, and (2) it appointed new management and trustees.

---

**3.** These offices are located in London, Frankfurt, Hong Kong, Beijing, Riyadh, Kuwait City and Dubai.

MRT did not sell its assets to another entity or liquidate them: it remains intact. Furthermore, almost all of the shareholders in VPT were creditors of MRT, and became shareholders because the chapter 11 plan converted a portion of their debt into stock.

VPT is the same entity, for purposes relevant to this motion, that filed this bankruptcy case under the name of MRT. In addition, its shareholders are the very creditors to whom Bucher owed his fiduciary duties as a trustee of MRT (after its insolvency), and to whom he still owes certain fiduciary duties as a former trustee. These fiduciary duties are inconsistent with his (or his firm's) representation of Zim in this adversary proceeding. Thus VPT has standing to bring this motion.

**2. Choice of Law**

The determination of the governing standards of professional conduct in this case is complicated by the multiplicity of jurisdictions relevant to this analysis. There is no unified set of standards for professional conduct for United States lawyers: they are governed by the standards adopted in the various states where they are licensed and where they practice law.

Bucher, whose conduct is at issue in this motion, is licensed to practice both in California and in the District of Columbia, and actually practices in the District of Columbia office of Bryan Cave. Litigation counsel for Zim in this case is based in Bryan Cave's St. Louis office, and is admitted to practice in that state.[4] This Court has admitted St. Louis counsel pro hac vice to litigate this adversary proceeding. Finally, this litigation is taking place in the Central District of California. The standards of professional conduct of all three of these jurisdictions are potentially relevant to the determination of the motion before the Court. Thus the Court must decide initially which jurisdiction's standards of professional conduct to apply in determining the motion before the Court.

In determining which standards of professional conduct to apply, the Court must be sensitive to the realities of law practice in firms with national and international practices, such as those on both sides in this litigation. Attorneys in such firms are licensed to practice by a variety of jurisdictions, including foreign countries, whose standards for professional conduct may vary substantially. In addition, such attorneys frequently perform legal services in jurisdictions outside of those where they are licensed to practice.

This pattern of law practice is no longer limited to attorneys in large firms and specialists: many lawyers now find that their practices overlap jurisdictional boundaries, both among the United States and with foreign countries as well. This complicates the analysis that must be undertaken to determine the applicable standards of professional conduct in a case like this.

**a. This Court's Local Rules**

 The choice of law analysis begins with the law of the forum, including its choice of law rules. *See, e.g., White Consolidated Industries. v. Island Kitchens, Inc.,* 884 F.Supp. 176, 179 (E.D.Pa.1995) (forum choice of law rules determine which state's substantive ethics rules to apply in motion to withdraw as counsel). At the international level, this body of law is known as private international law.

The applicable professional conduct standards for attorneys practicing in the Bankruptcy Court for the Central District of California are provided by Local Rule 102(5), which incorporates by reference Local Rule 2.5 of the District Court for the Central District of California. Rule 2.5 states:

> *2.5.1 Rules of Professional Conduct of the State Bar of California—State Bar Act.* Each attorney shall become familiar with and comply with the standards of professional conduct required of members of the State Bar of California, and the decisions of any court applicable thereto. Those statutes, rules and decisions are hereby adopted as the standards of professional conduct of this Court.

---

4. The Court assumes that the practice of all attorneys in this case, like that of many lawyers today, takes them into other states as well, and that sometimes their professional conduct is governed by the rules of those states.

2.5.2 *Other Standards.* No attorney shall engage in any conduct which degrades or impugns the integrity of the Court or in any manner interferes with the administration of justice therein.

Pursuant to Rule 2.5, the California Rules of Professional Conduct and State Bar Act,[5] as augmented by Rule 2.5.2 and applicable decisions, govern the conduct of the attorneys in this adversary proceeding. The applicable decisions include both case law, and opinions of appropriate bar associations, such as the Committee on Professional Responsibility and Conduct[6] ("COPRAC") of the California State Bar and the Committee on Professional Responsibility and Ethics[7] of the Los Angeles County Bar Association.

### b. California Choice of Law Rules

The determination that the lawyers' conduct in this case is governed by the standards of professional conduct applicable to California lawyers does not end the inquiry. California Rules of Professional Conduct Rule 1–100(D) provides that, in certain circumstances, the standards of professional conduct of another state may provide the substantive rules governing the conduct at issue. Rule 1–100(D) states:

Geographic Scope of Rules.

(1) As to members:

These rules shall govern the activities of members in and outside this state, except as members lawfully practicing outside this state may be specifically required by a jurisdiction in which they are practicing to follow rules of professional conduct different from these rules.

(2) As to lawyers from other jurisdictions:

These rules shall also govern the activities of lawyers while engaged in the performance of lawyer functions in this state, but nothing contained in these rules shall be deemed to authorize the performance of such functions by such persons in this state except as otherwise permitted by law.

Rule 1–100(D) raises the question of which jurisdiction's conflicts of interest rules determine the qualification of Bryan Cave to represent Zim in this case.

Because Bucher is an attorney licensed to practice law in California, Rule 1–100(D)(1) mandates that the California Rules of Professional Conduct (and presumably the State Bar Act) govern his conduct, insofar as it is relevant to this adversary proceeding, unless the rules of the District of Columbia, where he is practicing law, require that he follow different rules. However, for the purposes of this decision the Court gives no weight to Bucher's membership in the California bar. The Court thus assumes that Bucher's conduct in his practice of law in the District of Columbia is governed by the standards of professional conduct in the District of Columbia, and not by California standards.

### c. The Missouri Lawyers

For the St. Louis lawyers, who are licensed to practice law in Missouri, the analysis is somewhat different. They have come to California, to litigate in the Central District of California court. Although their client did not choose to be sued here, it did ask them to represent it here, and they voluntarily came and requested admission to the bar of this Court pro hac vice (which was granted). They thus became subject to this Court's Local Rule governing the professional conduct of attorneys appearing in this court, which provides:

An attorney who appears for any purpose submits to the discipline of the Court with

---

5. The standards for professional conduct for attorneys in California are mostly contained in the California Rules of Professional Conduct. However, some are codified in the State Bar Act, California Bus. & Prof.Code § 6000–6228 (West 1990 and Supp.1996).

6. COPRAC has issued 135 written opinions since 1965 interpreting the standards for professional practice applicable to California lawyers. (The latest opinion is numbered 1995–144; however, nine early opinions were not published.)

7. The Committee on Professional Responsibility and Ethics of the Los Angeles County Bar Association has issued 487 written opinions since 1917 interpreting the standards for professional practice for California attorneys. In addition, prior to 1980 it issued a large number of shorter, informal opinions of more limited application. The author of this opinion has been a member of this committee since 1979, and served as its chair in 1985–86.

respect to conduct of the case or proceeding and shall be subject to the standards of professional conduct as set forth in Local Rule 2.5 of the District Court.

Local Rule 102(5). However, this does not resolve the issue of the applicable standards of conduct, because the applicable California rules include its choice of law rules.

### d. Governing Rules on Disqualification for Conflict of Interest

Rule 1–100(D)(2) of the California Rules of Professional Conduct provides the solution to this problem: the California standards of professional conduct govern the activities of an attorney while engaged in litigation in a California court, including this Court. This is in accord with § 6(1) of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1969), which provides: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."

The relevant policies of the forum provide the dominant factor in determining the qualification of counsel to appear in the forum. Thus the local rules of the forum court (without consideration of its choice of law rules) determine the standards that an attorney must satisfy to appear as counsel in the court. It does not matter whether another jurisdiction where the lawyer practices has standards that are more demanding or less demanding.

There are important policy grounds for this rule. The representation of interests that may be conflicting directly impacts the quality of justice provided by a court. More importantly, it impacts the appearance of justice in the eyes of the public.

This principle is illustrated in the universal requirement that an attorney obtain admission pro hac vice to appear in a court in a state where the attorney is not licensed to practice. In this Court, for example, an attorney applying for admission pro hac vice must show his or her good moral character and good standing in the bar of the attorney's home state. Local Rule 102(2)(a). In addition, if the attorney is admitted pro hac vice, the attorney submits to the discipline of the Court with respect to conduct of the case or proceeding, and is subject to the standards of professional conduct set forth in Local Rule 2.5 of the District Court. Local Rule 102(5). The California Rules of Court impose similar requirements on a non-California attorney who wishes to appear in a state court in California. California Rules of Court 983 (West 1995). Thus the California standards of conduct, which have been adopted by this Court, provide the applicable substantive rules applicable to this motion.

The importance of applying local conflict of interest standards is illustrated in this case. Bryan Cave is an international law firm, with attorneys practicing in countries where conflicts of the sort presented in this case may not be grounds for disqualification.[8] Even though disqualification may not be required in consequence of the conduct in the jurisdiction where the attorney is licensed to practice, the forum court cannot permit the representation to go forward if there is a disabling conflict under the forum's rules. In addition, the Bryan Cave lawyers from St. Louis who are admitted pro hac vice have submitted themselves to the rules of this Court, including the governing professional standards.

The Court makes no determination whether Bucher is permitted by the District of Columbia Rules of Professional Conduct to undertake the representation of Zim in this Court. Assuming that those rules would permit this representation, his conduct nevertheless disqualifies his law firm here, under the California standards applicable in this Court.

### B. Bucher's Adverse Fiduciary Duties

█ Attorneys are not the only holders of fiduciary duties. Fiduciary duties are owed by individuals who play a variety of other

---

8. The Bryan Cave attorneys practicing in its foreign offices who are licensed to practice law in nations that are members of the European Community are governed by the Code of Conduct for Lawyers in the European Community, adopted in 1988. Section 2.3 of this Code has a confiden-tiality requirement similar to that found in the attorney professional responsibility rules in the United States. A number of Eastern European countries that hope to join the Community have also adopted this Code.

roles, such as agents, trustees, partners, corporate officers and bankers. An attorney takes on fiduciary duties when the attorney undertakes such a role, which may give rise to conflicts .with the representation of a client. Such conflicts may require the attorney's disqualification in a particular case.

### 1. Nature of Fiduciary Duties at Issue

█ Maryland law imposes fiduciary duties on a corporate director. The fiduciary duties of a corporate director include the duty of care, the duty of loyalty, and the duty of independence. *See, e.g.,* Daniel B. Bogart, *Liability of Directors of Chapter 11 Debtors in Possession: "Don't Look Back—Something May Be Gaining on You,"* 68 AM. BANKR. L.J. 155, 168–79 (1994).

To say that a person has fiduciary duties only begins the analysis. As Justice Frankfurter has said, further inquiry is required to determine to whom the fiduciary duty is owed, what obligations are owing, in what respects have the obligations not been discharged, and what are the consequences of the deviation from duty. *SEC v. Chenery Corp.,* 318 U.S. 80, 85–86, 63 S.Ct. 454, 458–59, 87 L.Ed. 626 (1943).

#### a. Fiduciary Duty of Loyalty

Maryland case law specifically recognizes the duty of loyalty to the corporation as one of these fiduciary duties. *Independent Distributors, Inc. v. Katz,* 99 Md.App. 441, 637 A.2d 886, 895 (1994); *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 382 A.2d 564, 565 (1978); *see also Federal Deposit Ins. Corp. v. Sea Pines Co.,* 692 F.2d 973, 976 (4th Cir. 1982) (stating that directors hold a place of trust to the stockholders of the corporation).

█ The parties have agreed that the fiduciary duties of a REIT trustee are essentially the same as the fiduciary duties of a corporate director in all respects relevant to this motion. Thus Bucher had a duty of loyalty to MRT arising from his position as a member of its board of trustees. This duty continues in certain respects today.

#### b. Duty to Protect Confidential Information

█ As part of the duty of loyalty, a fiduciary relationship imposes obligations on the fiduciary relating. to confidential information that the fiduciary receives in consequence of the fiduciary position. The general rule is that a fiduciary who receives confidential information as a result of the fiduciary relationship is prohibited from disclosing the information, except in the furtherance of the interests of the beneficiary of the fiduciary relationship. *Cf.* RESTATEMENT (SECOND) OF AGENCY § 395 (agent has duty not to use or to disclose information confidentially given by the principal or acquired during the course of or on account of the agency).

█ The fiduciary duty of loyalty of a corporate director includes a duty to preserve the confidentiality of confidential information received from the corporation during service as a director. This rule applies to all information received by a director in the course of his or her duties that is not in the public domain, and that the corporation does not presently want to have publicized.[9]

#### c. Fiduciary Duties to Creditors

█ The fiduciary duties of a director of a corporation are owed to the corporation in the first instance. However, when a corporation becomes insolvent, the residual stakeholders in a corporation become the unsecured creditors, if there is a substantial amount of unsecured debt, and the secured creditors where the unsecured debt is not extensive. Correspondingly, the fiduciary duties of a corporate director are expanded to include creditors when a corporation becomes insolvent. *See, e.g.,* FDIC v. Sea Pines Co., 692 F.2d 973, 976–77 (4th Cir.), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 299 (1982); *Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 787–90 (Del.Ch. 1992); *see also CFTC v. Weintraub,* 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985) (in a chapter 11 case where the debtor remains in possession, the debtor's directors

---

**9.** The rule is not limited to the protection of information subject to the attorney-client privilege. If the prior fiduciary relationship did not involve an attorney-client relationship, there may be no privileged communications to protect. The rule applies nevertheless.

owe fiduciary duties to both creditors and shareholders); *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, No. 12150, 1991 Westlaw 277613 (Del. Ch. Dec. 30, 1991) (directors of corporations merely in the vicinity of insolvency owe fiduciary duties to creditors). It is the time of insolvency, not the time of the filing of a bankruptcy case, that determines the ripening of these additional fiduciary duties. *Geyer*, 621 A.2d at 787–90. This shift in fiduciary duties also occurs in a REIT, for the same reasons, when it becomes insolvent.

■ According to its schedules, MRT had assets worth approximately $344.6 million, and liabilities of $347.6 million when this bankruptcy case was filed.[10] Presumably the financial status was similar four days earlier, when MRT decided to file the bankruptcy case and when it approved the Zim transaction. MRT's insolvency continued until the effective date of its chapter 11 plan, which converted some of its debt into equity and restored it to solvency.

Because MRT was insolvent at all times relevant to this adversary proceeding, Bucher owed fiduciary duties to MRT and to these creditors, whom the MRT plan of reorganization has now transformed into VPT shareholders.

**d. Termination of Fiduciary Duties: Former Director or Trustee**

While conceding that Bucher at one time owed fiduciary duties to MRT, Bryan Cave argues that a director's fiduciary duties terminate when the director leaves the board, and that the result is the same for a trustee leaving a REIT's board of trustees. In consequence, the firm argues, it is not hindered in representing Zim in this lawsuit by those duties formerly owing by Bucher.

■ In general Bryan Cave's argument is correct: the fiduciary duties of a director or trustee terminate when the director or trustee ends his or her tour of duty. *See Dowell v. Bitner*, 273 Ill.App.3d 681, 210 Ill.Dec. 396, 652 N.E.2d 1372, 1379 (1995) (holding that a corporate officer's duty not to

compete with the corporation terminates when the officer's employment with the corporation ceases); *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 382 A.2d 564, 568 (1978) (same). However, Bryan Cave overstates this point in claiming that Bucher's fiduciary duties terminated in all respects.

■ The duty to protect and preserve confidential information received during service as a director continues after the director leaves the board. Similarly, this duty continues for a trustee of a REIT after the trustee ceases to serve. This duty includes a duty to refrain from profiting from any such information, or disclosing it to anyone else absent authorization. In other respects, the duty of loyalty owed by a director or REIT trustee terminates with the end of the fiduciary position. Bucher continued to be bound by his duty of loyalty not to disclose confidential information after he left the MRT board of trustees, and continues to be bound by this duty today.

**2. General Conflicts of Interest Rule**

■ The rule prohibiting a lawyer from representing clients with conflicting interests is an instance of a more general rule: a lawyer may not represent a client when the representation involves a conflict of interest with any other position that the attorney holds or represents. Such a conflict may arise from the attorney's own interests, or from fiduciary duties of any sort that the attorney has undertaken. While the most typical application of this rule occurs where the conflicting interests relate to different clients, the rule is much broader.

The California Rules of Professional Conduct provide:

> If a member has or had a relationship with another party interested in the representation, or has an interest in its subject matter, the member shall not accept or continue such representation without all affected clients' informed written consent.

---

10. In contrast, in its first case MRT had assets worth approximately $600 million, and debts totally approximately $400 million.

*Id.* Rule 3–310(A).[11] This provision codifies the "substantial relationship" test for disqualification: if the attorney's former fiduciary duties included matters that have a substantial relationship to the present representation, disqualification is required.

Perhaps the most important purpose of this rule is to preserve confidential information received in the prior fiduciary relationship. If there is a reasonable probability that confidential information was received which would be relevant in a later adverse representation, a substantial relationship is presumed. *See, e.g., Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir.1980).[12] Once a substantial relationship is shown between the prior fiduciary relationship and the new representation, the court must conclusively presume that the attorney possesses confidential information and order disqualification. *Henriksen v. Great American Savings & Loan*, 11 Cal.App. 4th 109, 14 Cal.Rptr.2d 184, 186 (1992).

Rule 3–310(A) notably does not limit the disqualifying relationship to the representation of another client. *William H. Raley Co. v. Superior Court*, 149 Cal.App.3d 1042, 197 Cal.Rptr. 232, 235–236 (1983) ("Professional responsibilities do not turn on whether a member of the State Bar acts as a lawyer."). Fiduciary duties undertaken as a member of a board of directors or board of trustees are included within the scope of an attorney's relationships that may give rise to a disqualifying conflict of interest under this rule. *Id.* In *Raley*, for example, the court required the disqualification of a law firm as counsel for plaintiff where a partner in another office of the firm served on the board of directors of a bank, and the bank was trustee for a trust that was defendant's sole shareholder.

*Berry v. Saline Memorial Hospital*, 322 Ark. 182, 907 S.W.2d 736, 738–39 (1995), also illustrates this principle. In *Berry*, Clark Brewster, a member of the law firm Boswell, Tucker & Brewster, had been a member of the board of governors of Saline Memorial Hospital for a period of three years. Thereafter Brewster's law partner Ted Boswell was hired to bring a malpractice action against the hospital arising out of the death of a patient one day after emergency surgery, which was performed 25 days after Brewster left the hospital board. In addition to the malpractice action, the law firm brought a separate action under the Arkansas Freedom of Information Act to obtain records for which the hospital had asserted a statutory quality assurance privilege, and thus refused to produce in discovery. In this

---

11. Similarly, the ABA Model Rules of Professional Conduct provide:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after consultation.

*Id.* Rule 1.7(b). The District of Columbia Rules of Professional Conduct are similar:

> [A] lawyer shall not represent a client with respect to a matter if:
>
> (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests.

12. The "confidences" referred to in *Trone* and other pre–1983 cases (before the ABA's adoption of the Model Rules of Professional Conduct) are limited to communications protected by the attorney-client privilege. *See* ABA Model Code of Professional Responsibility DR 4–101(A). Similarly, California Business and Professions Code provides:

> It is the duty of an attorney to do all of the following:
>
> (e) To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.

*Id.* § 6068(e) (West 1990). The definitions of the terms "confidence" and "secret" in § 6068(e) are adopted from ABA MODEL CODE OF PROFESSIONAL RESPONSIBILITY DR 4–101(A). Los Angeles County Bar Association Formal Op. 400 (1982). However, the "substantial relationship" rule is also designed to protect what DR 4–101 calls "secrets," which include all other information gained in the prior relationship that the attorney has been requested to hold inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the party to whom the fiduciary duty was owing.

latter action the hospital moved to disqualify the law firm, because Brewster had obtained confidential information on this subject while serving as a director of the hospital.

After recognizing the fiduciary duties of a member of a hospital's board of directors, the Arkansas Supreme Court stated:

> When a lawyer is on a board of a hospital, the lawyer owes a fiduciary duty to the hospital, and the lawyer should not take any action that conflicts with that duty, such as filing a suit against the hospital.

*Id.* at 739. The Court found that the prior departure of the attorney from the hospital board of directors did not avoid the problem, where the attorney had obtained relevant confidential information during his tenure on the board:

> After the lawyer's term on the board ends, the lawyer should not take any action to the detriment of the hospital when that action is based upon confidential information the attorney gained during the fiduciary relationship.

*Id.* In consequence, the Supreme Court of Arkansas held that a lawyer who served on the hospital's board of governors was disqualified as counsel in the action against the hospital, and that his law firm was likewise disqualified.

Similarly, COPRAC has recognized that such relationships can create conflicts of interest. In Formal Opinion No. 1981–63 it stated:

> For the purpose of rule [3–310] of the Rules of Professional Conduct, a conflict of interest may arise from an attorney's relationship with a non-client. Such a conflict of interest may arise where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity. It may also arise where the attorney has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client.

In this opinion COPRAC took the position that the law firm of a member of a city council may not ethically represent tort plaintiffs in actions against the city, even though the city has given informed consent.

■ In this case the Court has found that Bucher did not act as attorney to MRT while he served as a member of its board of trustees. Thus he may not have received information relevant to this disqualification motion that was protected by the attorney-client privilege. However, the Court must presume that he did receive confidential information for which VPT is entitled to continued protection.

Furthermore, this presumption is irrebuttable. Proof of actual confidences is not necessary, and a fiduciary is not permitted to present evidence that the fiduciary did not receive relevant confidences. *Henriksen,* 14 Cal.Rptr.2d at 186; *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 280 Cal.Rptr. 614, 617 (1991).[13] That inquiry would be improper, because it would require the very disclosure that the rule is intended to protect. *Trone,* 621 F.2d at 999.

■ The rule disqualifying an attorney from representing an opposing party on a matter substantially related to a prior representation of a former client is an instance of this rule. *See Trone,* 621 F.2d at 998. If the prior representation is substantially related to the new case, the attorney is irrebuttably presumed to have received confidential information in the former representation, and is disqualified from the subsequent representation. *See Trone,* 621 F.2d at 998; *Global Van Lines, Inc. v. Superior Court,* 144 Cal. App.3d 483, 192 Cal.Rptr. 609, 613 (1983)

In fact, VPT has pointed to some confidential information in Bucher's possession, that he has discussed with his litigation partner handling this case. Bucher knows who the decision makers were at MRT, and who is likely to have information concerning the

---

**13.** Apparently the only exception to this rule in the reported case law is *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir.1975), where the court refused to disqualify a junior associate who had had only brief, informal discussions on a procedural matter on a case, and had done a limited amount of legal research, and the senior attorneys on the case submitted affidavits that he had received no confidential information. *Id.* at 756.

transaction at issue in this litigation. He has discussed providing an introduction to Victor H. Schlesinger, the former chairman of the board of trustees, for example. It may give the defendant a tactical advantage, at least, to have access to this information and appropriate introductions. Such an introduction makes it much easier to obtain information relevant to the litigation, and makes it much more likely that such information will be volunteered in private, rather than requiring that Zim proceed by a deposition attended by VPT's counsel.

 Informed written consent by all affected parties waives the conflict of interest. California Rules of Professional Conduct Rule 3–310(A). Where the conflict is between two clients or a present and a former client, it is the affected clients who can give the waiver. Where the conflict arises from a fiduciary duty arising from a relationship other than an attorney-client relationship, the other party must give a written waiver, under the California rule. Neither Bucher nor Bryan Cave has sought VPT's informed written consent, and this motion makes it clear that such consent is not available.

## C. Bucher Disqualified to Represent Zim

### 1. Application of General Rule

 The fiduciary duties that Bucher owes to MRT and its creditors disqualify him from representing Zim in this adversary proceeding. Bucher was on the board of trustees of MRT when the Zim transaction was considered and approved. The Court finds it likely that he received confidential information relating to the transaction with Zim at the board meeting where the transaction was approved. He may have received confidential information relating to the transaction or to MRT generally that is relevant to this litigation outside of the board meeting as well. Thus the Court must presume that he received such confidential information, and holds that this presumption is irrebuttable. Bucher is disqualified from representing Zim in this litigation.

### 2. Bucher's Lack of Memory

 Bucher's alleged lack of memory is not a defense to such an irrebuttable presumption. The present recollection of an attorney is not an adequate criterion for determining whether confidences were disclosed. *Achter v. Weyerhauser Co.,* 1995 WL 302406 (N.D.Cal.1995). Poor memory has never been considered an excuse for taking on a representation involving a conflict of interest. *Id.; Rosenfeld Construction Co. v. Superior Court,* 235 Cal.App.3d 566, 286 Cal. Rptr. 609, 615 (1991) (holding that the present recollection of the members of a firm is not an adequate criterion for determining whether the tainted lawyer's law firm had sufficient knowledge to disqualify the firm); *Global Van Lines, Inc. v. Superior Court,* 144 Cal.App.3d 483, 192 Cal.Rptr. 609, 612 (1983) (attorney's claim of lack of present recollection is not acceptable when attorney was head of corporate legal department to which matter would logically have been referred).

Furthermore, memory may be refreshed. It would be entirely improper to permit a fiduciary to undertake a conflict of interest based on lack of memory of confidential information, only to have the memory refreshed and the conflict become actual at a later date. To avoid this possibility, poor memory cannot excuse a conflict of interest in the first instance.

### D. Bryan Cave Vicariously Disqualified

 The general rule is that an attorney's disqualification to represent a client applies to every attorney in the firm where the disqualified attorney practices. *See Trone,* 621 F.2d 994, 999 (9th Cir.1980); *Westinghouse Electric Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311, 1318 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). In California the rule is stated as follows: "The imputed knowledge theory holds that knowledge by any member of a law firm is knowledge by all of the attorneys in the firm, partners as well as associates." *Chadwick v. Superior Court,* 106 Cal.App.3d 108, 164 Cal.Rptr. 864, 868 (1980); *Henriksen v. Great American Savings & Loan,* 11 Cal.App. 4th 109, 14 Cal. Rptr.2d 184, 187 (1992); *accord, Berry v.*

*Saline Memorial Hospital,* 322 Ark. 182, 907 S.W.2d 736 (1995) (finding that service on board of directors by one law firm partner disqualified entire firm in subsequent matter where board member obtained information substantially related to representation of subsequent client).

This rule is not articulated in the California Rules of Professional Conduct. *See Henriksen,* 14 Cal.Rptr.2d at 187. However, California case law has adopted the rule from the ABA Model Code of Professional Responsibility. *Chadwick,* 164 Cal.Rptr. at 868. More recently, without reference to the ABA Model Code, California case law has reaffirmed the applicability of this rule. *Henriksen,* 14 Cal.Rptr.2d at 187.

The District of Columbia rule is similar. It provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7....

District of Columbia Rules of Professional Conduct Rule 1.10(a).

The imputation rule disqualifies all offices of a law firm. *See Westinghouse,* 580 F.2d at 1321. The rule applies to large law firms with many offices (including foreign offices) such as Bryan Cave. *Id.; see Truck Insurance Exchange v. Fireman's Fund Insurance Co.,* 6 Cal.App. 4th 1050, 8 Cal.Rptr.2d 228, 234 (1992) (duty of loyalty owed a client of a large law firm is same as that owed to the client of a smaller firm).

*Westinghouse* is instructive on this subject. The Chicago office of Kirkland & Ellis represented Westinghouse, a major manufacturer of nuclear reactors, as plaintiff in an antitrust action against its uranium suppliers. The District of Columbia office had previously represented some defendants as members of a trade organization, but the two offices had no knowledge of the conflicting representation until the complaint was filed. At the time of filing Kirkland & Ellis had 130 attorneys in its Chicago office and 40 attorneys in its District of Columbia office. The district court tried to carve out an exception to the strict application of the imputed disqualification for a large law firm, where different offices represented the conflicting parties. The trial court found that "the changing realities of modern legal practice" made a less rigid approach appropriate. *Westinghouse Electric Corp. v. Rio Algom Ltd.,* 448 F.Supp. 1284, 1304 (N.D.Ill.1978). The Seventh Circuit reversed, and stated:

> [T]here is no basis for creating separate disqualification rules for large firms even though the burden of complying with ethical considerations will naturally fall more heavily upon their shoulders.

580 F.2d at 1321.

▮ Bryan Cave is precisely the sort of large law firm that the Seventh Circuit had in mind when in made this ruling. Bryan Cave has approximately 400 attorneys practicing in sixteen offices, including seven foreign countries. Under the *Westinghouse* standard, it is of no consequence that Bucher practices with the Washington office, and the litigation relating to this case is being handled by the St. Louis office. Like an infectious disease, the disqualification affects every lawyer in the law firm, wherever located.[14]

It is also of no consequences that Bucher is of counsel to Bryan Cave, rather than a partner or associate. Under the ABA Model Rules, an attorney may be designated "of counsel" only if the attorney has a "close, regular and personal" relationship with the law firm. *See* ABA Formal Ethics Opinion 1990–357. The ABA opinion specifies that the "of counsel" relationship results in the "mutual attribution of all disqualifications of both the lawyer and the firm...." Similarly, Standard (5) adopted by the board of Governors of the State Bar of California under Rule 1–400 of the California Rules of

---

**14.** Indeed, it is this rule as much as any other consideration that will eventually limit the size of law firms (and perhaps does already). Unlike the accounting profession, the legal profession will likely not eventually merge into half a dozen gigantic firms, that would handle the lion's share of legal business. This conflicts rule assures that there will continue to be a rather large number of law firms that share the practice of law.

Professional Conduct[15] makes it a presumptive violation of the rule to designate a lawyer as "of counsel" unless the attorney has a relationship with the firm that is "close, personal, continuous, and regular," and presumably invokes the same mutual disqualifications.

■ Because these two formulations of the rule are essentially similar, the Court need not decide which controls in this case. There is no need to invoke choice of law rules where there is no conflict between the substantive laws of the respective jurisdictions.

■ The principal recognized exception to this rule[16] permits a law firm to wall off a disqualified attorney in certain circumstances. Such an ethical wall must be as imposing and impregnable as the Great Wall of China (and thus it has been called a "Chinese wall"). Traditionally, an ethical wall has been permitted only for former government attorneys entering private practice, and this is the rule in California. *Henriksen,* 14 Cal.Rptr.2d at 187–88; *Klein v. Superior Court,* 198 Cal.App.3d 894, 244 Cal.Rptr. 226, 236–37 (1988). Certain courts, led by the Seventh Circuit, have also permitted such a wall when an attorney moves from one law firm to another. *See, e.g., Analytica,* 708 F.2d at 1267; *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 257 (7th Cir. 1983). California has rejected this view. *Henriksen,* 14 Cal.Rptr.2d at 187–88.

Bryan Cave cannot invoke an ethical wall in this case for a second reason: it has made no attempt to erect such a wall. The typical elements of an ethical wall are: physical, geographic, and departmental separation of attorneys, prohibitions against and sanctions for discussing confidential matters; established rules and procedures preventing access to confidential information and files; procedures preventing a disqualified attorney from sharing in the profits from the representation; and continuing education in professional responsibility. *Henriksen,* 14 Cal. Rptr.2d at 188 n. 6; *see also Smith,* 757 F.2d at 1101–02 (listing factors to be considered); *Schiessle v. Stephens,* 717 F.2d 417, 421 (7th Cir.1983) (same). Bryan Cave has set up no such procedures in this case.

Furthermore, it is now too late to remedy this deficiency. *See Smith v. Whatcott,* 757 F.2d 1098, 1101–02 (10th Cir.1985) (requiring that the ethical wall be put in place when the conflict arises); *Cobb Publishing, Inc. v. Hearst Corp.,* 907 F.Supp. 1038, 1047 (E.D.Mich.1995) (delay of 11 or 18 days in setting up ethical wall is too long); *Henriksen,* 14 Cal.Rptr.2d at 188 n. 6.

■ Bryan Cave claims that Bucher shared no directors' fees with the law firm, and that this supports its claim that, even if Bucher is disqualified, the disqualification is not imputed to other lawyers in the firm. The Court finds the lack of sharing in directors' fees to be of no consequence on this issue. Whether Bucher is required to share his directors' fees with the law firm turns entirely on his agreement with the law firm.[17] The law firm may choose whether or not to require an attorney to share directors' fees with the firm, but its decision on this subject

---

**15.** California Rules of Professional Conduct Rule 1–400, which regulates advertising and solicitation by California attorneys, authorizes the Board of Governors of the State Bar to adopt standards to specify presumptive violations of the rule. The rule specifies that the standards be used only as presumptions affecting the burden of proof in disciplinary proceedings involving alleged violations of the rules. *Id.* Rule 1–400(E).

**16.** There are other exceptions to the rule imputing one attorney's disqualification to the entire firm, but none is applicable here. Rule 3–320 of the California Rules of Professional Conduct disqualifies an attorney where another party's lawyer is a spouse, parent, child, or sibling of the attorney, lives with the attorney, is a client of the

attorney, or "has an intimate personal relationship" with the attorney. The discussion of this rule states that the disqualification is not imputed to other attorneys at the law firm. Cf. ABA MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.8(*l*) (disqualification based on similar list of relationships; comment [5] states that disqualification is not imputed to members of firms with whom the lawyers are associated).

Several recent opinions have refused to impute to members of a law firm a statutory disqualification of counsel under the Bankruptcy Code for lack of disinterestedness. *See, e.g., In re Timber Creek, Inc.,* 187 BR. 240 (Bankr.W.D.Tenn.1995).

**17.** For law firm partners, this issue is determined by the provisions of the partnership agreement.

is of no consequence for vicarious disqualification.

### E. Other Arguments

There are three other grounds on which VPT argues that Bryan Cave must be disqualified. The Court does not find any of these three arguments persuasive. However, the Court finds that VPT's case is made without the help of these arguments.

#### 1. Bucher as Attorney for MRT

First, VPT contends that Bucher served as an attorney for MRT, as well as a member of the board of trustees, because he was the only attorney who was a member of the board. While this is true, Bucher has testified that Morgan, Lewis & Bockius was MRT's legal counsel, and that he did not provide legal services to MRT at any time while he served on its board of trustees. VPT presents no other evidence in support of its contention. The Court finds that Bucher did not serve as an attorney for MRT, but that his fiduciary duties nevertheless create a conflict of interest that requires his disqualification, and the vicarious disqualification of Bryan Cave.

#### 2. Bucher as a Witness

Second, VPT contends that Bucher and his law firm must be disqualified because it is likely that Bucher will be required to testify in this case. Rule 3.7(a) of the ABA Model Rules of Professional Conduct provides: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. . . ." Similarly, the DR 5–102 of the ABA Model Code of Professional Responsibility states:

> (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue the representation. . . .
> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client,

he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Under either the Model Code or the Model Rules formulation of the rule, VPT contends that Bucher and Bryan Cave must be disqualified, because Bucher will be a percipient witness of what happened at the board of trustees meeting concerning the Zim transaction, and perhaps as to other matters as well.

However, the California Rules of Professional Conduct govern this issue, and they do not require disqualification of an attorney-witness unless the trial is conducted before a jury. Rule 5–210 of the California Rules of Professional Conduct provides: "A [lawyer] shall not act as an advocate before a jury which will hear testimony from the member. . . ." The discussion to rule 5–210 states: "This rule is not intended to encompass situations in which the [attorney] is representing the client in an adversarial proceeding and is testifying before a judge." No jury trial has been demanded in this adversary proceeding, and it appears that there may be no right to a jury trial. *See Langenkamp v. Culp*, 498 U.S. 42 (1990) (holding that a creditor does not have a Seventh Amendment right to a jury trial when the creditor submits a claim against the estate, since the determination of the creditor's claim and the ensuing preference action by the trustee are part of the bankruptcy court's equity jurisdiction).

Thus Bucher's status as a likely witness does not require his disqualification, or that of Bryan Cave, as counsel for Zim in this case.

#### 3. Appearance of Impropriety

Third, VPT challenges Bryan Cave's representation of Zim in this case on the grounds that Bucher's former service as a trustee for MRT creates an appearance of impropriety. However, California has no rule requiring that an attorney avoid the appearance of impropriety.

The rule prohibiting the appearance of impropriety is contained in Canon 9 of the ABA Model Code of Professional Responsibility, which states: "A lawyer should avoid even

the appearance of professional impropriety." The ABA Mode Code was superseded by the ABA Model Rules of Professional Conduct in 1983. While the Model Code continues in force in nine states, no party has argued that any of those states has any substantial relation to the motion before the Court.

Some care is required in determining whether a standard of professional conduct that is not adopted in a California statute or rule applies to California attorneys. In some cases, such as the vicarious disqualification rule applicable in this case, the rule should be read into the California standards notwithstanding its lack of codification. As another example, in *SIPC v. Vigman,* 587 F.Supp. 1358 (C.D.Cal.1984), Judge Tashima of the district court in this district (and now sitting on the Ninth Circuit) held that a violation of Rule 1.11(a) of the ABA Model Rules of Professional Conduct may provide a basis for disqualifying former government lawyers representing a private party on a matter connected to their government work. *Id.* at 1363.

In contrast, in other instances, the lack of such a rule reflects a conscious decision in California to reject the rule. COPRAC opined in 1983 that, "the ABA [Code of Professional Responsibility] is not intended to be looked to as having any special significance to California Lawyers."[18] Formal Opinion 1983–71 (1983). Although that opinion was promulgated before the American Bar Association adopted the Model Rules of Professional Conduct, the applicable principle is the same: the ABA Model Rules have no special significance for California lawyers. Similarly, Roderick Leonard states: "California attorneys are not bound by either the American Bar Association Model Code of Professional Responsibility nor the American Bar Association Model Rules of Professional Conduct." Roderick W. Leonard, *The New California Rules of Professional Conduct— What They Mean,* 11 Glendale L.Rev. 1, 9 (1992).

The rule on the appearance of impropriety falls into the second of these two categories. California has never had a rule requiring that attorneys avoid the appearance of impropriety, and has expressly refused to adopt such a rule. Similarly, the ABA Model Rules of Professional Conduct have also rejected such a rule. See ABA Rule 1.9, comment [5]. The District of Columbia has adopted the relevant portions of the ABA rule (with substantial modifications), and has likewise abolished the appearance of impropriety as a standard for attorney conduct. *Griva v. Davison,* 637 A.2d 830, 843 (D.C.App.1994). Accordingly, the Court holds that there is no appearance of impropriety standard applicable to the conduct of Bryan Cave in this adversary proceeding.

## IV. CONCLUSION

The Court concludes that Bucher's service as a trustee of MRT at the time that the transaction at issue in this litigation was approved by MRT's board of trustees imposed on him fiduciary duties that disqualify him from serving as the attorney for the defendant in this adversary proceeding. The court further finds that this disqualification applies vicariously to all of the attorneys at Bryan Cave, where Bucher is of counsel, including those attorneys practicing in offices apart from that where Bucher practices. In consequence, the Court finds that Bryan

---

18. The California State Bar further stated:

The State Bar Act ... Rules of Professional Conduct, various statutes passed by the legislature ... and opinions of the California appellate Courts form the basis for establishing professional responsibility and conduct of California attorneys. To the extent these sources do not answer a particular question or solve a problem, other sources are explored, including sister state rules, court opinions, federal court opinions and the ABA code. The persuasiveness of these collateral sources should depend upon their underlying logic and historical basis.

The ABA code has no direct effect on California lawyers practicing in state and federal courts within California. It would, however, appear that the ABA code may be looked to as a collateral source, particularly in those instances where there is no direct authority found under applicable California rules, statutes or California appellate court opinions and there is no conflict with the public policy of California.

Formal Opinion 1983–71 (1983), at 2–3.

Cave is disqualified from representing Zim in this adversary proceeding.