Filed 7/23/19; Certified for publication 8/13/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY, | C085210 |
| Plaintiff and Respondent, | (Super. Ct. No. 342012000130439CUMCGDS) |
| v. | |
| CALIFORNIA GUILD et al., | |
| Defendants; | |
| CALIFORNIA STATE GRANGE et al., | |
| Interveners and Respondents; | |
| ELLIS LAW GROUP, LLP, | |
| Appellant. | |
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY et al., | C085873 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201200130439CUMCGDS) |

1

v.

CALIFORNIA GUILD et al.,

Defendants;

CALIFORNIA STATE GRANGE et al.,

Interveners and Respondents;

ELLIS LAW GROUP, LLP,

Appellant.

CALIFORNIA STATE GRANGE et al.,

Plaintiffs and Respondents,

v.

CALIFORNIA GRANGE FOUNDATION,

Defendant;

ELLIS LAW GROUP, LLP,

Appellant.

C085880

(Super. Ct. No. 34201600192665CUMCGDS)

These cases come to us as part of ongoing litigation between The National Grange of the Order of Patrons of Husbandry (the National Grange) and the Order's[1] relatively recent charter the California State Grange (the California Grange) (collectively respondents) against the Order's former California charter, now known as the California

---

**1** The Order refers to the Order of Patrons of Husbandry's organization as a whole, which consist of the National Grange and various constituent granges, including its state charters.

Guild (the Guild), which operated the California Grange Foundation (the Foundation) when the Guild's charter was previously active.[2] At issue here is the disqualification of the law firm representing the Guild and the Foundation -- Ellis Law Group -- following its hiring of an attorney who previously worked for Porter Scott, the law firm representing the National Grange. The trial court granted respondents' motions to disqualify Ellis Law Group in litigation initiated in 2012 while the court's prior order granting summary judgment in favor of the National Grange was pending on appeal in this court.[3] In litigation initiated in 2016 by only the California Grange against the Foundation, the trial court granted the California Grange's motion to disqualify Ellis Law Group as well. We affirm these orders.

### FACTUAL AND PROCEDURAL BACKGROUND[4]

### I

### *2012 Litigation*

In October 2012, the National Grange initiated litigation against the Guild, ultimately seeking a declaration to recover property the Guild refused to convey to the

---

**2**     Also named as parties in these cases are various officers or members of the organization and constituent granges. We will address their identities when appropriate. When referring to the National Grange, the California Grange, and the Guild we are also referring to the officers or members named in the suit unless indicated otherwise.

**3**     We affirmed the trial court's order granting summary judgment. (*National Grange of the Order of Patrons of Husbandry v. California Guild* (2017) 17 Cal.App.5th 1130, 1134 (*National Grange*).)

**4**     Respondents move for judicial notice of five court orders disqualifying Ellis Law Group from representing the Guild and the Foundation. We grant the motion in part and take judicial notice of the order issued by this court in case No. C080523. Because we have consolidated these appeals, we deny the motion as moot as to the trial court orders now before us in this appeal. Finally, we deny respondents' motion as to the order filed by this court in case No. C082338 and the order filed by the Sonoma County Superior Court in case No. SCV-260954 because they are irrelevant to resolution of this appeal.

3

Order's new California charter -- the California Grange, which was chartered in July 2014 -- after revocation of the Guild's charter. (*National Grange*, *supra*, 17 Cal.App.5th at pp. 1139-1140.) The California Grange intervened in this litigation in October 2014. (*Id.* at p. 1140, fn. 5.)

From the time this litigation was initiated until present, Porter Scott represented the National Grange and its former master Ed Luttrell, also named as a plaintiff in the suit. Schiff Hardin represented the California Grange and its master Ed Komski from August 2014 until present. Starting in February 2014, however, Komski was in communication with the National Grange and Porter Scott about the ongoing litigation and chartering process. Komski "freely shared confidential information with the National Grange's attorneys because [he] understood them to also be acting as the California State Grange's attorneys when it was [i]nactive and before it retained its own counsel." Even after the California Grange retained Schiff Harden, Komski shared confidential information with the attorneys at Porter Scott and authorized counsel to do so as well. "It [was Komski's] understanding that the National Grange and the California State Grange are jointly litigating the [case], seek the same ultimate relief, and have a complete unity of interests in this lawsuit."

Boutin Jones represented the Guild and its executive committee John Luvaas, Gerald Chernoff, Damian Parr, Takashi Yogi, Kathy Bergeron, and Bill Thomas, while Ellis Law Group represented the Guild's Master/President Robert McFarland.

Between March 10, 2014, and October 6, 2014, Anthony P. J. Valenti worked for Porter Scott. In total, Valenti billed 26 hours on the 2012 litigation by assisting in discovery, drafting memoranda, performing case law research, and communicating by phone and e-mail with Luttrell and Boutin Jones. "As an associate working on behalf of the National Grange, Mr. Valenti had complete, unrestricted access to [the National Grange's] confidential and privileged information and actual knowledge of that information."

4

In September 2015, the trial court granted the National Grange's motion for summary judgment finding property held by the Guild at the time of the revocation " 'should revert to possession and/or control of the [California Grange] under the Bylaws' " of the Order. (*National Grange*, *supra*, 17 Cal.App.5th at p. 1143.) The Guild, its executive committee, and McFarland all appealed, with Luvaas, Chernoff, and Parr later abandoning that appeal. (*Id.* at p. 1143, fn. 8.) By the end of 2016, and after the opening briefs were filed, the Guild and the remaining executive committee members retained Ellis Law Group as counsel.[5]

In March 2017, respondents learned Ellis Law Group had hired Valenti as an associate in April 2016. Respondents became aware of this fact because Ellis Law Group indicated Valenti was an attorney of record for the Guild on documents filed in litigation between the parties then pending in federal court. Valenti was also included on two e-mails around this time regarding the 2016 litigation between the California Grange and the Foundation. Ellis Law Group maintained that Valenti's name appeared on those documents by mistake.

Mark Ellis, the managing partner of Ellis Law Group and attorney of record for the Guild, was aware upon Valenti's hiring that he had previously worked for Porter Scott. At the time of his interview, Ellis asked Valenti whether he had ever worked on any of the National Grange litigation or learned any confidential information about the matter, to which Valenti said " 'no.' " Out of an abundance of caution, however, Ellis "ordered immediately that [Valenti] be ethically screened with no participation in, or having anything to do with, the National Grange cases, and he was, in fact, ethically screened in all contexts as to the National Grange cases." The files for the case were "segregated in a separate 'Grange' war room at Ellis Law Group office, to which

---

[5]     Because all defendants now share the same counsel, we will refer to them collectively from hereon as the Guild, unless indicated otherwise.

[Valenti] had no access." Further, the attorneys and paralegals assigned to the case "were instructed not to talk with Mr. Valenti about the Grange matters, and he was so instructed as well. He was not on any Grange distribution list."[6]

In November 2016, after obtaining files from Boutin Jones related to this litigation, Ellis learned Valenti had worked on discovery matters for the National Grange, as well as had spoken with Luttrell about the case. Ellis asked Valenti again whether he had worked on the case and Valenti stated he did not recall ever having worked for the National Grange.

Upon learning of Valenti's employment with Ellis Law Group, the National Grange filed a motion to disqualify Ellis Law Group in the trial court, as did the California Grange.[7] The National Grange also filed a motion to disqualify Ellis Law Group from the then pending appeal in this court. The trial court granted respondents' motions, as did we. In both trial court orders, it reasoned that Valenti had previously represented the National Grange and the California Grange, both of which had a substantial relationship to Ellis Law Group's representation of the Guild because the representation involved the same case. Because of this relationship, it was presumed that

---

**6** The evidence on this point is conflicting. In the California Grange's motion to disqualify Ellis Law Group it included a declaration from Ellis Law Group's former legal assistant who worked at the firm from the summer of 2016 until January 2017. During her time with Ellis Law Group, the legal assistant worked on the Grange cases and was a legal assistant to Valenti. At no time was she informed of the existence of an ethical wall nor were the Grange files kept in a separate room from where Valenti could access them. Ellis Law Group disputes these claims and submitted declarations from employees to the contrary.

**7** The California Grange initially sought to join the National Grange's motion to disqualify Ellis Law Group. The trial court denied the motion without prejudice to the extent it sought relief beyond what was requested by the National Grange. It reasoned the California Grange presented no factual or evidentiary showing relevant to the disqualification analysis. The California Grange later filed its own motion to disqualify Ellis Law Group.

Valenti possessed confidential information adverse to the National Grange and the California Grange. He was therefore disqualified from representing the Guild. Our order contained the same analysis. The trial court further held Ellis Law Group was automatically disqualified from representing the Guild because Valenti represented the opposing side in the same lawsuit. Again, our order contained the same analysis.

Ellis Law Group appeals the trial courts orders. (See *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 791, fn. 10.)

II

*2016 Litigation*[8]

Following the disqualification of Ellis Law Group from the 2012 litigation, the California Grange filed a motion to disqualify it from representing the Foundation in litigation resulting from a complaint it and Komski filed in 2016. That action involves the control of charitable funds held by the Foundation, which was created in 1992 by the Order's then California charter. The California Grange contends that upon revocation of the charter, the Guild diverted the property of the Foundation to itself when it should have returned it to the newly chartered California Grange.

The California Grange's motion was based on the same facts presented in its motion relating to the 2012 litigation. Ellis Law Group submitted additional evidence in opposition to the motion, including an undated memo circulated to the entire firm

---

[8] In a footnote to its opening brief regarding the 2016 litigation, Ellis Law Group moves for judicial notice of the California Grange's articles of incorporation and a federal court order dismissing the California Grange from litigation involving the " 'California State Grange' " trademark. It did not provide us with the documents it seeks for us to judicially notice. We deny Ellis Law Group's motion because it was improperly brought. (See Cal. Rules of Court, rules 8.252(a), 8.386(e).) We further conclude the standing argument advanced in that same footnote is forfeited for failure to comply with the California Rules of Court. (Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must state each point under a separate heading or subheading "and support each point by argument and, if possible, by citation of authority"].)

outlining the standards for "continuing compliance with the tenets of an ethical wall," which had already been discussed among the staff.  The memo provides that Valenti "shall not be permitted to disclose or discuss any information related to or concerning any National Grange matter" and that his legal assistant will not be permitted to work on "National Grange cases."  The memo also provides that the files for the National Grange cases will remain segregated and not accessed by either Valenti or his legal assistant, in addition to other measures to ensure Valenti and his legal assistant are not contacted regarding the Grange matters.  The memo was signed by all employees of the firm.  Valenti and his legal assistant also signed affidavits agreeing to comply with the firm's ethical screen related to Grange matters.  Ellis Law Group also submitted what appears to be a photo of the room where it keeps Grange related files, with the previously described memo posted on the door.

The trial court granted the California Grange's motion to disqualify.  It found Ellis Law Group's representation of the Foundation had a substantial relationship to Valenti's prior representation of respondents mandating disqualification of Valenti.  Because Ellis Law Group's representation of the Foundation was not in the same case as Valenti's representation of respondents, the trial court did not believe disqualification of Ellis Law Group was mandatory and instead analyzed the effectiveness of the ethical wall it imposed.  It found the ethical wall lacking and disqualification of Ellis Law Group necessary.

Ellis Law Group appeals.

## DISCUSSION

"Whether an attorney should be disqualified is a matter addressed to the sound discretion of the trial court.  [Citations.]  In exercising that discretion, the trial court is required to make a reasoned judgment which complies with the legal principles and policies applicable to the issue at hand.  [Citation.]  Discretion will thus be deemed to have been abused if the trial court fails to exercise discretion where such exercise is

8

required." (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 113.)

"Under [former[9]] rule 3-310(D) of the California Rules of Professional Conduct, an attorney may not represent a new client whose interests are adverse to those of a former client on a matter in which the attorney has obtained confidential information. The purpose of the rule is to protect the confidential relationship which exists between attorney and client, a relationship which continues after the formal relationship ends. [Citation.] The fiduciary nature of that relationship requires the application of strict standards. [Citation.] For that reason, a former client may seek to disqualify a former attorney from representing an adverse party by showing that the former attorney possesses confidential information adverse to the former client. [Citation.]

"In order to seek disqualification, the former client need not establish that the attorney actually possesses confidential information. It is enough to show that there was a 'substantial relationship' between [the subjects of] the former and the current representation. If the former client establishes the existence of a substantial relationship between the two representations the court will conclusively presume that the attorney possesses confidential information adverse to the former client and order disqualification." (*Henriksen v. Great American Savings & Loan*, *supra*, 11 Cal.App.4th at pp. 113-114, fn. omitted; *Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 796.)

"As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well. [Citations.] This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit." (*Henriksen v. Great American Savings &*

---

[9]    Following the trial court's orders, the California Rules of Professional Conduct were amended.

*Loan*, *supra*, 11 Cal.App.4th. at pp. 114-115, fn. omitted.)  In such a case, a court has "no choice but to disqualify the entire firm." (*Id.* at p. 115.)  "[T]he ethical wall concept has not found judicial acceptance in California on our facts:  a nongovernmental attorney armed with confidential information who switches sides during the pendency of litigation. . . .  [T]he entire firm must be vicariously disqualified even if [the disqualified attorney] has been ethically screened from day one." (*Id.* at pp. 115-116, fn. omitted.)  "[T]he rule [is] quite clear cut in California:  where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law." (*Id.* at p. 117; see also *Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 800 [noting "the *Hendriksen* rule that vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case"].)

If, however, the attorney represented the adverse party in a different case, then "a case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case" is appropriate. (*Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 800.)  "Once the moving party in a motion for disqualification has established that an attorney is tainted with confidential information, a rebuttable presumption arises that the attorney shared that information with the attorney's law firm. The burden then shifts to the challenged law firm to establish 'that the practical effect of formal screening has been achieved.  The showing must satisfy the trial court that the [tainted attorney] has not had and will not have any involvement with the litigation, or any communication with attorneys or []employees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed.' " (*Id.* at pp. 809-810, fn. omitted.)

"The specific elements of an effective screen will vary from case to case, although two elements are necessary:  First, the screen must be timely imposed; a firm must

10

impose screening measures when the conflict first arises. . . . Second, it is not sufficient to simply produce declarations stating that confidential information was not conveyed or that the disqualified attorney did not work on the case; an effective wall involves the imposition of *preventive measures* to guarantee that information will not be conveyed." (*Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 810.) " 'The typical elements of an ethical wall are: [(1)] physical, geographic, and departmental separation of attorneys; [(2)] prohibitions against and sanctions for discussing confidential matters; [(3)] established rules and procedures preventing access to confidential information and files; [(4)] procedures preventing a disqualified attorney from sharing in the profits from the representation; and [(5)] continuing education in professional responsibility.' " (*Id.* at pp. 810-811, quoting *Henriksen v. Great American Savings & Loan*, *supra*, 11 Cal.App.4th at p. 116, fn. 6.)

## I

### *2012 Litigation*

Ellis Law Group contends the trial court improperly disqualified it from representing the Guild in the 2012 litigation. We disagree.

As the trial court found, because Valenti previously represented respondents in the 2012 litigation, he is presumed to possess confidential information adverse to those parties and therefore he and the law firm he works for is disqualified from representing the Guild in that case.

Ellis Law Group argues this is a faulty conclusion for multiple reasons.[10] Specific to the California Grange, Ellis Law Group argues no evidence established Valenti or

---

[10] We reject Ellis Law Group's procedural argument that the California Grange's motion to disqualify "was a thinly disguised motion for reconsideration by another name" that did not abide by the rules for filing of such a motion. We agree with the general proposition that Code of Civil Procedure section 1008 prohibits a party from filing repetitive motions for the same relief. "Here, [however], the trial court indicated it

11

Porter Scott ever represented the California Grange. Not so. The California Grange could not act on its own behalf while it was inactive. As a result, the National Grange acted on behalf of the California Grange at that time. Indeed, Komski declared he freely shared confidential information with Porter Scott attorneys starting in February 2014 and throughout the litigation. The California Grange was chartered in July 2014 and retained its own counsel in August 2014. Thus, between February 2014 and August 2014, Porter Scott represented the California Grange. Valenti worked for Porter Scott starting in March 2014 and until October 2014, at which time he worked on the 2012 litigation, thus representing the California Grange. The fact that the California Grange did not have a formal retainer agreement is of no consequence as the attorney-client relationship does not form upon the signing of a contract but when " 'a party seeking legal advice consults an attorney at law and secures that advice.' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1148.)

Ellis Law Group next argues no evidence established Valenti actually learned of any confidential information adverse to respondents. This, however, is not the test. Once it is established that an attorney worked on a prior case substantially related to the current case, or in this instance the same case, it is conclusively presumed that attorney knows confidential information adverse to his or her former client. (*Henriksen v. Great American Savings & Loan*, *supra*, 11 Cal.App.4th at pp. 113-114.) Thus, respondents need not show Valenti actually knew confidential information.

Ellis Law Group's reliance on *Adams* is misplaced. *Adams* involved the disqualification of an attorney whose former firm represented a client in a matter

wanted to reconsider the [disqualification] issue when it denied the first motion *without prejudice*, so Code of Civil Procedure section 1008 is inapplicable. Denial of a motion without prejudice impliedly invites the moving party to renew the motion at a later date, when he can correct the deficiency that led to the denial." (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1015.)

substantially related to a current lawsuit in which the attorney represented parties adverse to that former client. The attorney was not personally involved in his former firm's representation of the client. (*Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1329-1330.) The *Adams* court concluded the attorney's knowledge of confidential information, necessarily resulting in his disqualification, could not be presumed solely from the attorney's membership in his former firm. (*Id*. at p. 1337.) Instead, *Adams* stated a "modified version of the 'substantial relationship' test" applied. (*Id.* at p. 1340.) Upon remand, *Adams* instructed the trial court to determine based on the particular circumstances of the case whether the attorney was reasonably likely to have obtained confidential information relating to the current representation while working for his former firm. (*Id*. at pp. 1340-1341.) In contrast, Valenti personally worked on the case the former clients sought to disqualify him from, thus his possession of confidential information is presumed.

Ellis Law Group further attacks the court's conclusions arguing no evidence established Valenti ever represented the Guild since he was ethically screened from the start of his employment at Ellis Law Group. Thus, Valenti did not represent a client adverse to his former client. The fact that Valenti would be disqualified if he represented the Guild is enough for our purposes here. Attorneys who work together are presumed to talk to one another. (See *Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 800.) The fact that Valenti worked for a client in litigation and then worked for the firm representing the adverse party in the same litigation presents the same concerns as if Valenti represented the adverse party himself. By simply not listing an attorney as an attorney of record or keeping that attorney's name off documents and other communications to avoid disqualification allows for an exception that would swallow the rule.

Ellis Law Group also argues that an effective ethical wall was in place from the beginning of Valenti's employment, ensuring no confidential information passed from

13

him to other members of the firm. Because Valenti and Ellis Law Group represent an adverse party to Valenti's former client in the same litigation, a court has "no choice but to disqualify the entire firm." (*Hendriksen v. Great American Savings & Loan*, *supra*, 11 Cal.App.4th at p. 115.) The effectiveness of the ethical wall in place is irrelevant to our inquiry here.

Ellis Law Group next appeals to concepts of equity. As to the California Grange, Ellis Law Group argues the California Grange waited too long to bring its disqualification motion, thus forfeiting the issue.[11] This argument is premised on the assumption the California Grange learned of Valenti's hiring in June 2016. To support this assumption, Ellis Law Group points to a forensic analysis it had done of visitors to its firm Web site and Valenti's profile in particular. The results showed that somebody using Porter Scott's IP address viewed Valenti's profile on June 10, 2016. This evidence, however, does not show who accessed Valenti's profile, let alone that it was an attorney of Porter Scott or an attorney assigned to this particular case. As a result, we cannot say the California Grange learned of Valenti's hiring in June 2016 and thus forfeited its claim by waiting until April 2017 to move for disqualification.

As to respondents, Ellis Law Group argues policy interests mandate denial of the disqualification motions. The thrust of Ellis Law Group's argument is disqualification would be unfair because Ellis Law Group is an innocent actor and believed Valenti when he said he had not worked on Grange matters while working at Porter Scott. We do not see Ellis Law Group as innocent as it paints itself. By its own admissions, it learned in November 2016 that Valenti worked on this litigation and did nothing to inform opposing

---

[11] While Ellis Law Group argues in its brief challenging the trial court's order disqualifying it from representing the Guild against the California Grange that the National Grange also forfeited this issue, that argument is not advanced in its brief challenging its disqualification in the litigation against the National Grange.

14

counsel of that discovery, let alone seek waiver as the professional rules required. (Rules Prof. Conduct, former rule 3-310(E).)

Neither would ordering disqualification "call into question the fairness of the process." On the contrary, not ordering disqualification would undermine confidence in the legal process. "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, *supra*, 20 Cal.4th at p. 1145.) "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' " ' (*Id.* at p. 1146.)

The evidence showed Valenti's name appeared on communications from Porter Scott to Boutin Jones, who represented the Guild defendants other than McFarland prior to retention of Ellis Law Group. Following Valenti's hiring by Ellis Law Group, the Guild and executive committee members other than McFarland hired Ellis Law Group as counsel. While the Guild's and executive committee members' motives may have been pure and finding new counsel in the future may be burdensome, viewing this series of events from respondents' perspective calls into doubt the integrity of the legal system if disqualification is not ordered.

Further, there is no evidence respondents sought to disqualify Ellis Law Group for tactical reasons as Ellis Law Group suggests. Indeed, the matter had already progressed through the trial court and appellate briefing had been completed at the time respondents moved for disqualification. Moreover, as discussed, there was no meaningful delay between respondents' discovery of Valenti's hiring by Ellis Law Group and the filing of

15

respondents' motions to disqualify. Accordingly, public policy weighs in favor of disqualification.

Finally, Ellis Law Group argues the law mandating automatic disqualification when an attorney who previously represented a client in an action begins working at the firm representing an adverse client in the same litigation is flawed and outdated. It urges us to follow *Kirk.* As shown above, we are. After an in-depth analysis of the law regarding disqualification, the *Kirk* court concluded the applicable rule was as follows: "Given this history, we conclude that it is improper to rely on *Flatt* as creating an absolute rule of vicarious disqualification in California. Instead, we believe that neither *Flatt* nor *SpeeDee Oil* addressed the issue of whether vicarious disqualification is absolute, and the state of the law is that as initially expressed by the appellate courts: (1) a case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case; (2) tempered by the *Henriksen* rule that vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case." (*Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 800.)

As discussed, because Valenti worked on the 2012 litigation on behalf of respondents, he is presumed to possess confidential information, and he then switched sides in the same case. Accordingly, disqualification of Ellis Law Group is required in the 2012 litigation.

## II

### *2016 Litigation*

Ellis Law Group contends the trial court abused its discretion by disqualifying it from the 2016 litigation between the California Grange and the Foundation. Again, we disagree.

As an initial matter, we reject Ellis Law Group's argument Valenti did not represent the California Grange for the reasons already provided. Moreover, as the trial

court found the California Grange and the National Grange had a unity of interest in the 2012 litigation, such that respondents may be treated as one for conflict purposes. Indeed, the whole purpose of the 2012 litigation initiated by the National Grange was to transfer property from the Guild to the California Grange as the Guild was required to do when its charter was revoked. The arguments would have been the same had it been the California Grange that filed the litigation as opposed to the National Grange. The only reason the California Grange could not sue on its own behalf was because it had not yet been chartered. (See *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 248 [finding unity of interest between a client corporate parent and nonclient wholly owned subsidiary].) Thus, the California Grange is a former client of Valenti and can seek his and Ellis Law Group's disqualification by a showing the current representation has a substantial relationship to the past representation.

In this vein, Ellis Law Group does not take issue with the trial court's finding that the issues presented in the 2012 litigation were substantially related to the issues presented in the 2016 litigation. Instead, it presents the same arguments it did when challenging the court's orders disqualifying it from the 2012 litigation. First, Ellis Law Group contends Valenti never represented the Foundation, so he nor Ellis Law Group can be disqualified from representing it now. We reject this argument for the same reasons we rejected it regarding the Guild. Valenti works for Ellis Law Group, that is enough for our purposes here.

Second, Ellis Law Group contends no evidence showed Valenti ever obtained any confidential information from the California Grange. Having concluded the two cases are substantially related as the trial court did, a finding Ellis Law Group does not challenge, that is the end of our inquiry as far as Valenti's knowledge is concerned. It is presumed he knows confidential information; no showing is required. (See *Henriksen v. Great American Savings & Loan*, *supra*, 11 Cal.App.4th at pp. 113-114.) For the same

17

reasons already stated -- that Valenti actually worked on the 2012 litigation -- *Adams* is inapplicable to the analysis regarding the 2016 litigation.

Third, the California Grange did not unreasonably delay as Ellis Law Group contends. Again, this argument is premised upon the assumption the California Grange learned of Valenti's employment at Ellis Law Group in June 2016. The evidence does not substantiate this assumption.

Having shown the 2012 and 2016 litigation were substantially related, our inquiry now moves to whether Ellis Law Group has imposed an effective ethical wall. (*Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at pp. 800, 809-810 [If the attorney represented the adverse party in a different case, a rebuttable presumption arises, and the challenged law firm must establish the practical effect of formal screening has been achieved].) Ellis Law Group argues it met its burden because it imposed an ethical wall upon Valenti's hiring that segregated him from Grange related files and associates assigned to the cases. The problem with this argument is the evidence to support it was not created contemporaneous with the imposition of an ethical wall. The memo submitted by Ellis Law Group was prepared to document the continued adherence to the rules verbally imposed by Ellis, as was Valenti's and his secretary's signing of an affidavit. Similarly, the declarations were prepared to document what was previously told to Ellis Law Group employees. There is no evidence of practices and policies regarding an ethical wall being formally imposed at the time of Valenti's hiring and declarations purporting to impose such protective measures are insufficient. (*Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at p. 810.) Moreover, evidence of the ethical wall was conflicting and mistakes did in fact occur -- Valenti's name appeared as an attorney of record on court documents and he was copied on communications with opposing counsel -- further tending to show any ethical wall that was imposed was ineffective.

18

Ellis Law Group's reliance on *Kirk* is misplaced.  It relies on this case to argue "*automatic disqualification* of the entire firm was *not* warranted based solely on the fact that the firm subsequently employed" an attorney who previously worked at a firm that represented an adverse party.  We agree this was the holding of *Kirk*, as did the trial court (see *Kirk v. First American Title Ins. Co.*, *supra*, 183 Cal.App.4th at pp. 800, 809-810) which is why the trial court analyzed the ethical wall imposed by Ellis Law Group to assess its effectiveness.  Like us, it found the ethical wall ineffective.  We conclude there was no abuse of discretion in that finding.

Ellis Law Group's remaining arguments are those also made regarding the 2012 litigation -- that policy demands the Foundation be allowed to retain Ellis Law Group as counsel and adherence to *Hendriksen* is flawed and outdated.  We reject these arguments for the same reasons we rejected them in connection with the 2012 litigation.  Accordingly, the trial court did not err by disqualifying Ellis Law Group from representing the Foundation in the 2016 litigation.

DISPOSITION

The orders disqualifying Ellis Law Group are affirmed.  Respondents are awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


/s/
Robie, Acting P. J.

We concur:


/s/
Hoch, J.


/s/
Krause, J.

19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>CALIFORNIA GUILD et al.,<br><br>    Defendants;<br><br>CALIFORNIA STATE GRANGE et al.,<br><br>    Interveners and Respondents;<br><br>ELLIS LAW GROUP, LLP,<br><br>    Appellant. | C085210<br><br>(Super. Ct. No. 34201200130439CUMCGDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |
| THE NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY et al.,<br><br>    Plaintiffs and Respondents,<br><br>  v.<br><br>CALIFORNIA GUILD et al., | C085873<br><br>(Super. Ct. No. 34201200130439CUMCGDS) |

1

Defendants;

CALIFORNIA STATE GRANGE et al.,

Interveners and Respondents;

ELLIS LAW GROUP, LLP,

Appellant.

CALIFORNIA STATE GRANGE et al.,

Plaintiffs and Respondents,

v.

CALIFORNIA GRANGE FOUNDATION,

Defendant;

ELLIS LAW GROUP, LLP,

Appellant.

C085880

(Super. Ct. No. 34201600192665CUMCGDS)

THE COURT:

The opinion in the above-entitled matter filed on July 23, 2019, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

 /s/
Robie, Acting P. J.

 /s/
Hoch, J.

 /s/
Krause, J.

2

EDITORIALS

C085210

APPEAL from a judgment (order) of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Porter Scott, Martin N. Jensen and Thomas L. Riordan, for Plaintiff and Respondent The National Grange of the Order of Patrons of Husbandry.

No appearance for Defendants California Guild.

Schiff Harden, Jeffrey D. Skinner for Interveners and Respondents California State Grange and Ed Komski.

Ellis Law Group, Mark E. Ellis and Maria S. Rosenfeld for Appellant Ellis Law Group.

C085873

APPEAL from a judgment (order) of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Porter Scott, Martin N. Jensen and Thomas L. Riordan, for Plaintiffs and Respondents The National Grange of the Order of Patrons of Husbandry.

No appearance for Defendants California Guild.

Schiff Harden, Jeffrey D. Skinner for Interveners and Respondents California State Grange and Ed Komski.

Ellis Law Group, Mark E. Ellis and Maria S. Rosenfeld for Appellant Ellis Law Group.

C085880

APPEAL from a judgment (order) of the Superior Court of Sacramento County, Raymond M. Cadei, Judge. Affirmed.

Schiff Harden, Jeffrey D. Skinner for Plaintiffs and Respondents California State Grange and Ed Komski.

No appearance for Defendant California Grange Foundation.

Ellis Law Group, Mark E. Ellis and Maria S. Rosenfeld for Appellant Ellis Law Group.