Filed 8/30/22 Northwestern Engineering v. Shemaria CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| NORTHWESTERN ENGINEERING COMPANY, <br><br> Plaintiff, Cross-defendant, and Appellant, <br><br> v. <br><br> JOSEPH SHEMARIA <br><br> Defendant, Cross-complainant, and Respondent. | B310718 <br><br> (Los Angeles County Super. Ct. No. SC128312) |

APPEAL from an order of the Superior Court of Los Angeles County, H. Jay Ford III, Judge. Affirmed.

Freund Legal, Jonathan D. Freund, Craig A. Huber, and Stephen P. Crump for Plaintiff, Cross-defendant, and Appellant.

Joseph Shemaria, in pro. per. for Defendant, Cross-complainant, and Respondent.

# INTRODUCTION

Appellant Northwestern Engineering Company and respondent Joseph Shemaria own adjoining real properties abutting the Venice Boardwalk. Northwestern's property is leased to several restaurants and Shemaria's property is leased to residents. At issue is a three-foot-wide "breezeway" situated between the two properties. A survey conducted in 2017 concluded the breezeway was part of Shemaria's property. However, Northwestern's tenants had been using it for storage since at least 1999. In June 2010, Northwestern constructed a "fixture" on the breezeway, consisting of shelving and poured concrete. In 2017, as a way of increasing the value of his rental property, Shemaria decided to offer his tenants use of the breezeway as a direct path to the Boardwalk; he requested Northwestern remove its personal property from the breezeway. Northwestern did not fully comply with the request and, when the parties could not agree upon terms permitting Northwestern to continue using the breezeway, Northwestern sued for a prescriptive easement. Shemaria cross-complained, alleging trespass.

In August 2019, while the complaints were pending, the City of Los Angeles ordered Shemaria to remove both the items Northwestern's tenants had stored in the breezeway, and the shelving fixture built there. In October 2019, Shemaria filed an ex parte application for a temporary restraining order and order to show cause why a preliminary injunction should not issue, enjoining Northwestern from

interfering with Shemaria's attempts to comply with the city's order; the court denied the application. In September 2020, Shemaria filed a motion for a preliminary injunction, asking the court to enjoin Northwestern from using the breezeway, and to order the removal of the personal property stored and shelving fixture built in the breezeway. The court granted the motion. This appeal followed.

Northwestern argues that: (a) the court erred in granting the injunction without determining whether Shemaria's motion complied with the requirements of Code of Civil Procedure section 1008 (Section 1008); (b) the court's factual findings were incorrect, and it wrongly balanced the equities; and (c) the injunction is overly broad. We conclude that: (a) Section 1008 is inapplicable; (b) substantial evidence supports the court's factual findings and its balancing of the equities was reasonable; and (c) Northwestern forfeited its overbreadth objection by failing to raise it below. We therefore affirm.

## STATEMENT OF RELEVANT FACTS

### A.    *The Complaint and Cross-Complaint*

In November 2017, Northwestern filed a complaint against Shemaria, which it amended twice. The operative complaint alleged that in July 1999, Northwestern purchased commercial property in Venice (the "Northwestern Property"). The Northwestern Property is a "multi-tenant[] retail property" leased to several

3

restaurants.  Shemaria owned an adjacent property (the "Shemaria Property").  Both properties were on Ocean Front Walk and a three-foot-wide breezeway ran between them. Northwestern claimed that from 1999 through 2010, it believed the breezeway was part of the Northwestern Property, and its tenants used it for ingress and egress and "for storage bins."  In June 2010, Northwestern built a "fixture" in the rear portion of the breezeway, consisting of a shelf and poured concrete.  Northwestern also alleged the breezeway was the only way to access certain electrical and gas lines on the Northwestern Property, and to perform other necessary maintenance and repairs.

Starting in July 2017, Shemaria repeatedly asked Northwestern to remove its personal property from the breezeway, claiming the breezeway was part of the Shemaria Property.  A survey of property lines appeared to prove Shemaria correct.  In September 2017, Shemaria removed the gate and locks that Northwestern had installed on Ocean Front Walk in front of the breezeway and replaced them with his own, thereby depriving Northwestern's tenants of access to the breezeway from Ocean Front Walk.

Northwestern alleged a cause of action for quiet title of a prescriptive easement for the breezeway, as well as claims for trespass and nuisance.  Northwestern also requested injunctive relief to enjoin Shemaria from barring Northwestern's access to the breezeway, and from interfering with Northwestern's use of it.

4

In May 2019, Shemaria filed a cross-complaint against Northwestern, alleging that he owned the Shemaria Property (which consisted of two apartments and a guest house), and that from 1999 to June 2017 Northwestern's tenants used the breezeway between the properties with Shemaria's knowledge and consent. In June 2017, Shemaria demanded that Northwestern remove the personal property stored in the breezeway and Northwestern complied only partially. The cross-complaint alleged causes of action for trespass, unjust enrichment, and nuisance.

## B. *Shemaria Seeks Injunctive Relief*

### 1. Shemaria's Ex Parte Application

In August 2019, the Los Angeles Housing and Community Investment Department (HCIDLA) sent Shemaria a "Notice and Order to Comply," stating that using the breezeway to store miscellaneous articles violated the municipal code, as did the shelving fixture. The "'Violations Severity Level,'" was rated "'HIGH.'"

In October 2019, Shemaria filed an ex parte application for a temporary restraining order and an order for Northwestern to show cause why a preliminary injunction should not issue enjoining Northwestern from refusing to remove "storage racks and storage items" from the breezeway, and from preventing Shemaria from complying with the August 2019 Notice to Comply. The minute order denying the application gave no reason for the denial, but

5

stated that it was "without prejudice."  Addressing its denial of the ex parte application at a later hearing, the court explained, "my feeling was that there was no urgency to have that TRO decided and issued that day.  It was not intended to forever adjudicate Shemaria's right to a preliminary injunction.  I think I said . . . that [Northwestern] should get proper notice so that the [cross-]defendant could have an adequate time to reply."

## 2. Shemaria's Motion for Preliminary Injunction

In September 2020, Shemaria moved for a preliminary injunction, asking the court to enjoin Northwestern from continuing to use any portion of the breezeway, and to order Northwestern to remove the "illegal construction and storage of all personal property" from the breezeway.  He attached a proposed preliminary injunction to this effect.  Shemaria alleged that Northwestern and its predecessor had been using the breezeway with his permission from 1983 to June 2017, but that after he revoked his permission in June 2017, Northwestern had refused to comply with his demand to remove the shelving fixture.  As a result, Shemaria claimed to be subject to an "enforcement action" by the City of Los Angeles.

Shemaria recounted some of the history of the use of the breezeway by Northwestern's tenants, alleging they had requested, and he had granted, permission to use it. Shemaria related an incident in 2000 when he was

instructed by the city's Department of Building and Safety to remove a refrigerator a tenant of Northwestern had rested against the Shemaria Property. Shemaria requested the Northwestern tenant remove the refrigerator and intended to revoke access to the breezeway altogether. In a letter to Northwestern dated January 2000, Shemaria wrote, "it has come to my attention that the whole south wall is constantly vibrating from the freezers that have motor(s) constantly running," and "I need back the three feet that runs from the Boardwalk to my parking lot." He opined that his property would be "far more desirable, easier to rent, much more valuable and safer" if his tenants could use the breezeway to reach the Boardwalk and asked Northwestern to "[p]lease advise as to how long you will need to vacate that portion of our lot." Northwestern's president, James Adelstein, acknowledged that he was made aware of the "refrigerator/freezer" situation, and that he instructed Northwestern's tenant to remove it. However, after David Abelar, the operator of one of the restaurants at the Northwestern Property, "pleaded" with Shemaria to permit continued use of the breezeway, Shemaria relented.[1]

Shemaria claimed that in June 2017, as part of his plan to increase the rental income from the Shemaria Property, he again wanted to offer his tenants use of the breezeway as direct access to the Boardwalk. He sent

_____

[1] According to Shemaria, Abelar was one of the individuals to whom he "had given permission to use the [breezeway] since 1983."

Northwestern a letter, demanding it remove the shelving fixture and other property from the breezeway. He sent a second such letter in July 2017. Shemaria claimed that Northwestern agreed to the removal but requested more time so its tenants could reconfigure their internal space to store the items then stored in the breezeway. Northwestern eventually complied only partially with Shemaria's request.

In February 2020, Shemaria received from HCIDLA a "Failure to Comply Notice," informing him that his failure to comply with the initial notice had resulted in his property being referred to legal enforcement. The notice specifically informed Shemaria that if he violated the municipal code, or permitted anyone else to do so, he would be "guilty of a misdemeanor, which is punishable by a fine of not more than $1,000.00 and/or six months imprisonment." HCIDLA inspector Munz, who had inspected the Shemaria Property several times, opined in a deposition that the personal property stored in the breezeway obstructed the evacuation route for a unit of the Shemaria Property, and that the shelving fixture was a fire hazard. He also explained that if Shemaria failed to comply with the city's orders, his property would be placed in a rent escrow account program, which would provide the tenants with a rent reduction and place the rental income into a city escrow account. He opined that exiting this program would be difficult, and that continued failure to comply with the city's request could result in prosecution by the City Attorney.

8

Based on this evidence, Shemaria alleged entitlement to an injunction. He argued the evidence established Northwestern had not been using the breezeway hostilely or under claim of right, and that Northwestern was requesting exclusive use over the breezeway, which would invalidate any prescriptive easement. Without an easement, Northwestern's use of the breezeway constituted trespass. As for the harm he would suffer without an injunction, Shemaria cited the potential referral of his property to the rent escrow account program, his potential criminal prosecution for failing to comply with the city's notices, and the danger to health and safety posed by the storage and shelving fixture.

### 3. Northwestern's Opposition to Shemaria's Motion

In its opposition, Northwestern claimed that its tenants had been using the breezeway openly and under a claim of right for decades, and that it was unaware of Shemaria's claim to the breezeway until the land survey conducted in June 2017. Northwestern also objected that Shemaria had brought his motion without satisfying the requirements of Section 1008, as allegedly required by the court's previous denial of his ex parte application. Northwestern additionally criticized Shemaria's lack of evidence "apart from his word," that the breezeway was used only with his permission. Northwestern further argued that Shemaria's failure to bring his motion until almost a year

after the court denied his ex parte application demonstrated a lack of imminent harm. Finally, citing an e-mail from the city stating that in light of the pandemic, "'hearings for cases with pending violations have been suspended at this time'" and a press release stating "Systematic Code Enforcement Program (SCEP) inspections are suspended until further notice," Northwestern contended that Shemaria failed to show harm because the city would not be prosecuting municipal code violations "for the foreseeable future" due to the pandemic. Northwestern did not complain that Shemaria's requested injunction was overbroad.

### 4. The Court Grants Shemaria's Motion

In December 2020, the court issued a tentative ruling granting Shemaria's motion. The ruling found Section 1008 inapplicable because the court had denied Shemaria's ex parte application without prejudice. It also found that Shemaria was likely to prevail on the merits because the prescriptive easement sought by Northwestern was impermissible in that it would give Northwestern exclusive rights over the breezeway and prevent Shemaria from using it, and because Northwestern had been using the breezeway with Shemaria's now-revoked permission. Finally, the court found that notwithstanding the pandemic-induced moratorium on enforcement actions, Northwestern's failure to comply with the HCIDLA notice "potentially expose[d] Shemaria to placement of the property in the Rent Escrow Account Program and/or criminal prosecution, and

10

continuing penalties and fines," and that the violations themselves were "a fire hazard and a public danger." The court determined that "the equities weigh in favor of the injunction." After hearing argument from both counsel, the court stated its intent to adopt the tentative ruling but continued the matter to permit the parties to confer about the amount of the bond. In January 2021, the court issued a preliminary injunction ordering that, upon Shemaria's posting of a $50,000 bond, Northwestern was required to, among other things: "Remove all of the property belonging to [Northwestern] from" the breezeway, "Remove all of the fencing, metal dividers, gates that [Northwestern] or its tenants caused to be erected on Shemaria's property," and "Stop using any portion of Shemaria's property for any storage, passageway, bypass or for any other reason without first obtaining Shemaria's written permission." Northwestern timely appealed.

## DISCUSSION

### A. *Section 1008 Is Inapplicable*
Section 1008 provides that a "party who originally made an application for an order which was refused . . . may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances,

11

or law are claimed to be shown." (Code Civ. Proc., § 1008, subd. (b).) Shemaria's October 2019 ex parte application requested a temporary restraining order and an order to show cause why a preliminary injunction should not issue. His September 2020 motion requested a preliminary injunction. Northwestern contends Shemaria's motion was subject to Section 1008 because it sought "identical relief" as the ex parte application. We disagree.

Shemaria's ex parte application requested Northwestern be enjoined from refusing to remove the "storage racks and storage items" from the breezeway, and from preventing Shemaria from complying with the August 2019 Notice to Comply. His motion for a preliminary injunction requested Northwestern be compelled to remove the "illegal construction and storage of all personal property" from the breezeway, but also asked the court to prevent Northwestern from using the breezeway without his permission. Additionally, a "'temporary restraining order is issued . . . pending a hearing on whether the plaintiff is entitled to a preliminary injunction'" and "'is of short duration, normally expiring at the time of the hearing on the preliminary injunction.'" (*Chico Feminist Women's Health Center v. Scully* (1989) 208 Cal.App.3d 230, 237, fn. 1.) In contrast, "a preliminary injunction is an order that is sought by a plaintiff prior to a full adjudication of the merits of its claim" and lasts "'until a final determination following a trial.'" (*Costa Mesa City Employees Assn. v. City of Costa Mesa* (2012) 209 Cal.App.4th 298, 305, italics omitted.) We

hold Section 1008 was inapplicable because both the substance and duration of the requested relief differed.[2]

Citing *Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007 and *National Grange of Order of Patrons of Husbandry v. Cal. Guild* (2019) 38 Cal.App.5th 706 (*National Grange*), the trial court found Section 1008 inapplicable because it had denied the ex parte application without prejudice. On appeal, Northwestern argues Section 1008 contains no exceptions for denials without prejudice. Because we find Section 1008 inapplicable, we need not address this contention.[3] (See *Young v. Fish & Game Com.*

---

[2] Citing *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30 (*Virga*), Northwestern contends the difference between the relief requested amounted to a "procedural difference." *Virga* is inapposite. There, the appellate court affirmed that although a second motion for attorney's fees was brought under a different statute than the first motion (which was denied), the second motion was subject to Section 1008 because it was "beyond dispute that [appellants] sought identical relief in both motions; namely, an award of their attorney fees." (*Virga, supra,* at 43.) In contrast, Shemaria's ex parte application and motion for preliminary injunction sought different relief.

[3] Were we to consider Northwestern's argument, we would find no error. In *Farber*, the appellate court held that "[d]enial of a motion without prejudice impliedly invites the moving party to renew the motion at a later date, when he can correct the deficiency that led to the denial." (*Farber, supra*, 141 Cal.App.4th at 1015.) *National Grange* quoted *Farber* with approval in rejecting an argument that a respondent's second motion to disqualify opposing counsel violated Section 1008, also *(Fn. is continued on the next page.)*

13

(2018) 24 Cal.App.5th 1178, 1192-1193 ["it is a settled appellate principle that if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning"].)

## B. *The Court Did Not Abuse Its Discretion in Granting the Preliminary Injunction*

When deciding whether to issue a preliminary injunction, a court considers "'two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief.'" (*Jay Bharat Developers, Inc. v. Minidis* (2008) 167 Cal.App.4th 437, 443.) "'The party challenging an order

---

finding the previous denial without prejudice impliedly invited the respondent to refile the denied motion. (*National Grange*, *supra*, 38 Cal.App.5th at 716, fn. 10.) Northwestern attempts to distinguish these cases by arguing the trial court here "*did not* indicate on the record it wanted to reconsider the propriety of granting the injunction at a later date." But as *Farber* and *National Grange* held, a denial without prejudice *impliedly* invites a refiled motion. Further, the record below confirms the court's implied intention: as it explained, it denied the ex parte application because "there was no urgency to have that TRO decided and issued that day. It was not intended to forever adjudicate Shemaria's right to a preliminary injunction" but rather to give Northwestern "proper notice so that the [cross-]defendant could have an adequate time to reply." The court's comments thus confirm what its denial without prejudice already implied, viz., its willingness to entertain Shemaria's request if brought on a noticed motion.

granting or denying a preliminary injunction has the burden of making a clear showing of an abuse of discretion. [Citation.] An abuse of discretion will be found only where the trial court's decision exceeds the bounds of reason or contravenes the uncontradicted evidence. [Citation.]' [Citation.] 'Where the evidence with respect to the right to a preliminary injunction is conflicting, the reviewing court must "interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order."'" (*Ibid*.) "Where the evidence before the trial court was in conflict, we do not reweigh it or determine the credibility of witnesses on appeal." (*Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618, 625.) "Our task is to ensure that the trial court's factual determinations, whether express or implied, are supported by substantial evidence." (*Ibid*.) When "'the preliminary injunction mandates an affirmative act that changes the status quo, we scrutinize it even more closely for abuse of discretion.'" (*Ibid*.)

### 1. Likelihood of Prevailing on the Merits

"The elements necessary to establish a prescriptive easement are . . . open and notorious use or possession that is continuous and uninterrupted, hostile to the true owner, and under a claim of right" for five years. (*Taormino v. Denny* (1970) 1 Cal.3d 679, 686; accord, *Hinrichs v. Melton* (2017) 11 Cal.App.5th 516, 525.) However, a prescriptive easement will not be granted if it gives the claimant

exclusive use of the property over which the easement is claimed. (See, e.g., *Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1090-1094 [though appellant had proven elements of prescriptive easement for trees planted and woodshed built on neighbor's land, trial court correctly refused to grant prescriptive easement when doing so would have given claimant exclusive use over land on which trees and shed sat]; *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1308 [error to grant prescriptive easement that deprives owner of access to portion of property upon which easement granted].)

The court found Shemaria likely to prevail on both the prescriptive easement and trespass claims because: (a) the easement sought by Northwestern would prevent Shemaria from using the breezeway; and (b) Northwestern had been using the breezeway with Shemaria's now-revoked permission. Northwestern argues the court erred because: (a) there was no evidence it claimed an "'exclusive right'" to the breezeway; and (b) there was no evidence it ever requested permission to use the breezeway. We discern no error.

### (a) Exclusive Right

Northwestern argues there is no evidence that its storage of items on the breezeway impeded Shemaria from using it. But Shemaria intended to use the breezeway as a means to increase the rental value of his property by offering it to his tenants as a path to the Boardwalk. Northwestern

admits it kept "storage bins" and stored "ladders, umbrellas, linens and a linen bin, cardboard and a range of other materials" in the breezeway. If Northwestern cluttered the three-foot-wide breezeway with storage bins and other detritus, Shemaria was self-evidently prevented from offering the breezeway to his tenants as a path to the Boardwalk.

Additionally, Northwestern fails to address that in June 2010, it built a "fixture" in the breezeway, consisting of a shelf and poured concrete. Northwestern is exclusively using the land on which the shelving fixture sits. Substantial evidence supports the court's conclusion that Northwestern's requested prescriptive easement would constitute an exclusive use over the breezeway.

### (b)  Permission

Contrary to Northwestern's contention, there is ample evidence its tenants used the breezeway with Shemaria's permission. First, Shemaria declared under penalty of perjury that he granted such permission in response to requests made by Northwestern's tenants. Second, after the City of Los Angeles asked him to remove a refrigerator a Northwestern tenant had stored in the breezeway, Shemaria wrote Northwestern, stating he needed the breezeway "back," thus implying it was part of the Shemaria Property that Northwestern was using only with his permission. This letter, admitted into evidence, was written more than 17 years before litigation commenced. Northwestern's

17

president admitted being informed of the situation, and there is no evidence Northwestern ever disputed Shemaria's claim.

Northwestern contends the letter is not evidence that it used the breezeway with Shemaria's permission because after his demand to take back the breezeway, Northwestern continued to use it. This contention ignores Shemaria's uncontradicted evidence that after a tenant "pleaded" with him to permit the restaurant to keep using the breezeway, he relented.[4]

Northwestern further distorts the record in contending that Shemaria "fail[ed] to identify anyone with any degree of specificity with whom he purports to have received a request 'for permission to use' his supposed property." First, he was not required to provide such specificity, as it was the trial court's task to determine the sufficiency of his testimony. (*Shoemaker v. County of Los Angeles*, *supra,* 37 Cal.App.4th

---

[4] We thus find inapposite Northwestern's citation to *Aaron v. Dunham* (2006) 137 Cal.App.4th 1244. There, the court found that because the former owners of a piece of real property had met the requirements for a prescriptive easement over a private road that provided easier access to the property, the new owners had acquired a prescriptive easement to use the road. (*Id.* at 1246-1249, 1252-1253.) But unlike the former owners in *Aaron* who used the road without permission, here there is evidence that Northwestern used the breezeway with Shemaria's permission. Moreover, *Aaron* involved an easement permitting a party to drive on a private road, and not an easement to permanently store property on that road, preventing the owners of the road from using it themselves.

at 625.) Moreover, he did. Shemaria's declaration identified David Abelar as the operator of one of the restaurants at the Northwestern Property to whom he "had given permission to use the [breezeway] since 1983." He further identified Abelar as the person who "pleaded" with him to continue using the breezeway in 2000. This testimony was uncontradicted. In short, substantial evidence supports the court's determination that Northwestern used the breezeway with Shemaria's permission.

## 2.    Balance of Harms

The trial court found that Shemaria would suffer the greater harm if the injunction were denied because he was subject to an enforcement action ordering him to remove all items Northwestern stored in the breezeway, as well as the shelving fixture, and because failure to comply with the city's notice would potentially cause the Shemaria Property to be placed in the rent escrow account program and subject Shemaria to criminal prosecution. The court also found that apart from the enforcement action, the items and fixture constituted a "health hazard."

Northwestern contends the court erred because: (a) Shemaria failed to demonstrate any imminent harm; and (b) the balance of equities favored Northwestern because the harm to Northwestern was "manifest and severe." We disagree, as substantial evidence supports the court's factual determinations, and the court reasonably balanced the equities in Shemaria's favor.

19

## (a)   Shemaria's Harm

Northwestern argues that Shemaria's claim of harm rang hollow because he waited eleven months after the denial of his ex parte application to file his motion, and "[n]othing [had] changed" in those eleven months. While the length of time between Shemaria's ex parte application and motion for preliminary injunction is evidence that could weigh against a finding of harm, Northwestern raised this issue in its opposition, and nothing suggests the court failed to consider it. By raising the argument again on appeal, Northwestern effectively asks us to reweigh the evidence. That is not our function. "Our task is to ensure that the trial court's factual determinations, whether express or implied, are supported by substantial evidence." (*Shoemaker v. County of Los Angeles*, *supra*, 37 Cal.App.4th at 625.)[5]

Northwestern also contends Shemaria suffered no harm, both because the pandemic suspended enforcement actions, and because Northwestern agreed to cover any fines Shemaria incurred. But enforcement actions were not

---

[5]     Moreover, it is untrue that "nothing [had] changed" between the denial of the ex parte application and the motion for preliminary injunction. In February 2020 (three months after the denial of the ex parte), Shemaria received a "Failure to Comply Notice," informing him that his failure to comply had resulted in his property being referred to legal enforcement. The notice specifically stated that if Shemaria violated the municipal code, or permitted anyone else to do so, he would be "guilty of a misdemeanor, which is punishable by a fine of not more than $1,000.00 and/or six months imprisonment."

suspended permanently and nothing in the record indicates Northwestern produced any evidence that the suspension would continue until a final judgment concluded the litigation. Additionally, even if Northwestern agreed to pay any fines Shemaria incurred, it could not send its executives to jail in Shemaria's stead, should Shemaria be prosecuted successfully for his failure to comply with the city's notice.

Northwestern also fails to address the evidence that its stored items blocked an evacuation route for the tenants of the Shemaria Property, and that the poured concrete and shelving fixture constituted a fire hazard. Should any of Shemaria's tenants be injured due to the storage or shelving, Northwestern could not absolve Shemaria of liability or immunize him from potential criminal prosecution. Substantial evidence supports the court's finding that Shemaria demonstrated irreparable harm.

### (b) Balance of Equities

Northwestern argues that the hardship it would endure from the court's granting the injunction would be "manifest and severe" because many of the items stored in the breezeway are unique and difficult to replace, because storing them offsite would be impractical, and because use of the breezeway was necessary to allow Northwestern to monitor, maintain, and repair the electrical and gas lines accessible from it. While Northwestern would undoubtedly benefit from the continued use of the breezeway, the evidence amply supports the trial court's determination that

21

Northwestern's use of Shemaria's property constituted "a fire hazard and a public danger" and violated the Los Angeles municipal code, subjecting Shemaria and his property to an enforcement action. We discern nothing unreasonable in the court's balancing of the equities.

### C. *Northwestern Has Forfeited Its Argument That the Injunction Is Overly Broad*

Shemaria's motion asked the court to enjoin Northwestern "from continuing to use any portion of" the breezeway and submitted a proposed preliminary injunction to this effect. Northwestern acknowledged the breadth of the request in its opposition.

On appeal, Northwestern argues the granted injunction is overly broad because it goes "far beyond removing the specter of purported harm Shemaria claims he would face in a city enforcement action," but instead enjoins Northwestern from using the breezeway at all without Shemaria's written permission. Northwestern forfeited this issue by failing to raise it in the proceedings below, where the court could have addressed it. "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26.) "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS*

*Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.) "We will therefore 'ignore arguments, authority, and facts not presented and litigated in the trial court.' [Citation.] Such arguments raised for the first time on appeal are generally deemed forfeited." (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.)

## DISPOSITION

The court's order is affirmed.  Respondent is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.

24